No. 18.—Lewis Davis, plaintiff in error, *vs.* Wm. Moody and Wife. defendants in error.

[1.] The liability, by Statute, of the putative father of a bastard child to

maintain the same, is a good consideration for a settlement, made in trust, for the benefit of the mother.

[2.] Where, upon trial of a bill in Equity, a bill of sale executed by F, and in terms conveying the absolute title of a negro slave to D, is offered in evidence, and there is no charge of fraud, accident or mistake, in the transacaction, parol proof that the same was conveyed to D, in trust for his daughter, cannot be admitted.

[3.] *Aliter*, if the bill alleges fraud, accident or mistake, and a case is made which will enable the Court to reform the instrument.

In Equity, in Crawford Superior Court.    Tried before Judge POWERS, September Term, 1853.

This bill was filed by William Moody and his wife, against Lewis Davis, for "discovery, relief and account".

The bill charges that previous to the inter-marriage of complainants in 1848, unfortunate difficulties, disagreements and disputes had arisen between Lewis Davis, the defendant, (and the father of Mrs. Moody, one of the complainants,) one Baldwin M. Fluker and Mrs. Moody, then Miss Davis, concerning grievous injuries and wrongs inflicted by the said Fluker, upon Mrs. Moody, one of the complainants; that for the purpose of effecting a compromise and adjusting the difficulties, and making compensation for the wrong and injury done the complainant, Mrs. Moody, the said Fluker, in 1843, turned over to Davis, the defendant, a negro man named Squire, of the value of $600, together with notes to the amount of $400, to have and to hold the same for the use and benefit of Mrs. Moody, one of the complainants; and the said Davis, then and there promised and agreed faithfully to execute said trust.

The bill further alleges, that previous to the inter-marriage of complainants, the defendant, as an inducement thereto, led complainant, Moody, and others in the community to believe, and gave them to understand, that the said property belonged to his daughter, now Mrs. Moody.

The bill prayed that the defendant be decreed to come to an account with complainants, and pay over to them the value of said property.

Davis *vs.* Moody and Wife.

The defendant, in his answer, admitted the wrongs done his daughter, Mrs. Moody, by Fluker, but denied that the property was turned over to him in trust for her but on the contrary, that Fluker had paid it to defendant, in satisfaction of his claims upon Fluker, for debauching his daughter, who, at that time, was under twenty-one years of age.

On the trial, complainants offered to read in evidence the testimony of Baldwin M. Fluker, taken by interrogatories—in substance, "that witness turned over to Lewis Davis, the negroes and notes specified in complainant's bill, sometime in February, 1843, in trust for his daughter, Frances P. Davis, now Moody. Davis received it, under an agreement to hold it in trust for her, and it was so understood between himself and Davis. Witness understood that Davis had taken out a bail writ for him, and that while it was in the hands of the Sheriff, he and Davis came to a compromise of the matter, through their friends, Henry L. Battle and Wm. M. Brown. Witness turned over property to Davis, as a compromise of said writ; and that it was turned over to Davis, by their settlement and agreement, in his trust, for his daughter, now Mrs. Moody".

Counsel for defendant objected to this evidence—the Court over-ruled the objection and admitted it, and defendant excepted.

Wm. M. Brown sworn. "He was called upon and was present, at the settlement between Davis and Fluker. Witness understood that Davis should pay himself out of the property, for his trouble and expense—the balance to go to his daughter Frances".

The defendant read in evidence, the testimony of Dr. Henry L. Battle, taken by interrogatories—in substance, "that he was present at the settlement—did not recollect any such understanding as that testified to by witnesses Fluker and Brown; witnessed the following 'bill of sale', which was read to the Jury by the defendant:

GEORGIA—UPSON COUNTY:

Received of Lewis Davis six hundred dollars, paid in hand,

for a certain negro man named Esqr. nineteen years of age. This negro I warrant and defend from myself, my heirs and assigns, and from all other persons.   The said negro man we warrant to be sound in body and in mind.   Jan'y 19, 1843.

HENRY L. BATTLE.                B. H. FLUKER."

The evidence having closed, counsel for defendant requested the Court to charge the Jury—

"1st. That if they believed from the evidence, that the agreement between Fluker and Davis was that Fluker should turn over the negroes and notes to Davis, in trust for his daughter Frances, in consideration of the dismissal of a suit instituted by Davis against Fluker, for the recovery of damages for debauching his daughter, that there is no meritorious or valuable consideration to support such agreement, and it cannot be enforced in Equity, especially if the Jury believe, from the evidence, that the property was turned over after the making of the bill of sale; and that a trust cannot be enforced in Equity, unless it be founded on a valuable consideration moving from the complainants.

2d. That the complainants must recover, if at all, upon the contract set up in their bill; and if the proofs do not support the contract, as charged, the complainants cannot recover.

3d. That the rule in Equity is, that the answer of the defendant to a bill in Equity, which is responsive to the allegations in the bill, is evidence for the defendant; and that in this case, that portion of defendant's, in which he denies the trust set up in the bill, is evidence for the defendant, and conclusive upon the complainants in this cause, unless expressly contradicted by two witnesses, or one witness and strong circumstantial evidence.   The Jury must look into the answer and testimony, and see whether it be thus contradicted; and in looking to the evidence, the Jury must be satisfied that it, if any, supports the precise contract set up in the bill.

4th. That the parol evidence of the trust in this case, if it contradicts the bill of sale from Fluker to Davis, cannot be made the foundation for a recovery in this case—the bill of

sale being the highest evidence of the contract between the parties.

5th. That it is the duty of the Jury to consider the proof of the defendant, including his answer, and if they believe, upon the whole case, that the equity of the case is with defendant, they should find for him.

On the first request, the Court declined to charge the Jury in the precise language, as requested, but did charge—

That a trust cannot be enforced in Equity, unless it be founded on a valuable consideration, moving from the "*cestui que trust*".

But if the Jury were satisfied, from the evidence, that Fluker, at the time of the making of the contract, and as a part of the contract itself, did turn over the negro and notes to Davis, in trust, for the benefit of his daughter, and that Davis so received, as a part of the contract, the property into his hands, with the agreement to carry out this trust, notwithstanding the agreement to dismiss his suit against Fluker might be the inducement and consideration which obtained the conveyance from Fluker; yet, there was a consideration sufficient, on the part of the complainant, Mrs. Moody, growing out of their past relations and obligations to sustain a trust created for her benefit, by Fluker. Davis could resign his claims, and although he could not attach them to his daughter, yet, independently of him, the relations, in the past, of herself and Fluker, was a sufficient consideration to sustain a conveyance actually made and executed in her behalf. The fact of the property being turned over, at the time of the making of the bill of sale, or subsequently, is not material, if it was turned over in pursuance of the terms of the trust, and for the purposes of the trust alone. The bill of sale, although absolute to Davis, will not prevent a Court of Equity from decreeing the trust in favor of his daughter, if, indeed, that was the real intention and actual contract of the parties.

In fact, the object of an appeal to this Court was, to enforce the equitable rights of the parties, as alleged against the legal advantage held by defendant at law; in other words, to set up the conveyance made by Fluker, in the terms and words in which

it was in fact made.   It is competent for a Court of Equity to do this when a proper case is made.

2nd.  Request charged as desired.

3d.  The Court charged as requested, and further—"But if the Jury believed the answer to be overthrown, as laid down in the rule, that so far then, as the answer itself was concerned, it was competent for the Jury to decree in favor of the complainants, on the case as made in their bill.   That if they decreed for complainants, they should decree in their favor for the value of the property, at the time it was turned over, with 8 per cent. interest, up to the present time, (as it seemed to be admitted that this was the proper ratio of interest for this case.)

 The Court further charged the Jury, (counsel for defendant urging on them that Fluker was not worthy of credit; and they were bound to disbelieve his testimony, because he was guilty of the shameful act of debauching the complainant, Mrs. Moody,) that they were not bound to discredit and disbelieve a witness entirely, although it might be known to them that he had committed an immoral act.

 The Court further charged—that if the trust was created in Davis, for his daughter, and the property turned over to him in pursuance of the trust and confidence reposed in him, that then was executed in him, for the benefit of his daughter, and that a Court of Equity would uphold and sustain a trust of this kind, when it was already executed, when, perhaps, it would not sustain a trust executory; and if Davis received into his hands the property, as trustee, by contract and agreement, it was executed in him, as before said, for his daughter, and he was bound to account to complainants as such trustee".

 To which charge and refusals to charge, counsel for defendant excepted.


 G. R. HUNTER, for plaintiff in error.


 S. & R. P. HALL and POE & NISBET,  for defendants in error.

Davis *vs.* Moody.and Wife.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] So far as the notes are concerned, which were turned over by Baldwin M. Fluker to defendant, we think the Court committed no error in charging, "that if the Jury were satisfied, from the evidence, that Fluker, at the time of making the contract, and as a part of the contract itself, did turn over the negro and notes to Davis, in trust, for the benefit of his daughter Frances, and that Davis so received, as part of the contract, the property into his hands, with the agreement to carry out this trust, notwithstanding the agreement to dismiss his suit against Fluker, might be the inducement and consideration which obtained the conveyance from Fluker; yet, there was a consideration sufficient, on the part of complainant, Mrs. Moody, growing out of their past relation and obligations, to sustain a trust created for her benefit by Fluker".

It is true, that the suit for seduction, which had been instituted against Fluker, was in the name of the defendant, and the settlement of the same was made by him; but it appears by the record, that the daughter had been delivered of a bastard child, with the paternity of which Fluker was charged; and he was by Statute made liable to maintain it, until it arrived at the age of fourteen. Such liability constituted a good consideration for any such settlement as it is insisted that he had made for the benefit of the girl whom he had wronged. This point has already been decided by this Court, in the case of *Hargrove et al. vs. Freeman.* (12 *Ga. R.* 342.)

The record shows, that he supposed the case instituted against him by Davis, was upon a charge of bastardy; and this, taken in connection with other features of the testimony, fully authorized the instructions as above quoted, if the Court had confined those instructions to the notes alone.

[2.] But the Court erred, in holding that this trust might be decreed as to the negro slave, Squire, upon such a case as is made in this bill.

In our opinion, the effect of this, was to allow parol proof,

---

for the purpose of raising a trust in opposition to the terms of this written instrument. We see not how this conclusion is to be avoided. The bill of sale from Fluker to Davis, by its terms, vests an absolute and unconditional title to the slave, in Davis. If the evidence which was offered, be allowed to show that the negro was received, and to be held by him in trust for his daughter, what is this, but to vary and contradict this written evidence of contract by parol testimony, without charge and proof of fraud, accident, or mistake?

[3.] It would be another matter, if the bill made a case which would enable a Court of Equity, upon proof of either of these things, to reform this instrument.

Judgment reversed.