Meyer, Respondent, vs. Meyer, imp., Appellant.

*December 13, 1904—January 10, 1905.*

*Bastardy: Pleading: Demurrer: Cause of action: Legal capacity to sue: Defect of parties: Separate estate of married woman: "Property": Trusts and trustees: Beneficiaries' right to sue: Public policy: Statutes: Waiver: When action accrues.*

1. Defendants, as principal and surety, gave plaintiff a bond which recited the arrest of the principal on a charge of bastardy upon the plaintiff. The recited consideration of the bond was the withdrawal and abandonment of such proceedings, and an agreement of marriage with and support of the prosecutrix. The condition of the bond was, in case the principal should fail to perform, that payment should be made to the county judge. The bond further provided that in case the amount to be paid for the support of the prosecutrix could not be agreed upon by the parties, the amount should "be determined by the aforesaid county judge, and shall be furnished and paid in the manner and way he may designate." In an action against the obligors on such bond the complaint was silent as to whether the plaintiff was or was not a married woman. On demurrer for legal incapacity to sue because plaintiff was a married woman, *held:*

(1) The court could not assume, because the bond recited that the bastardy proceedings were agreed to be discontinued in consideration of an agreement to marry, that such agreement had been consummated.

(2) Even if plaintiff were a married woman, the beneficial right under the bond was her sole and separate property, in regard to which, under sec. 2345, Stats. 1898, she is expressly authorized to sue in her own name.

(3) Even if plaintiff were a married woman, the husband was the adverse party, in which situation she is expressly authorized to sue in her own name. (Sec. 2608, Stats. 1898.)

2. In such case, there was no defect of parties, since if it is true that the plaintiff only has a beneficial interest in the bond, while the legal right to sue on it is in the county judge, the error goes to the cause of action, not to a defect of parties plaintiff.

3. In such case, the county judge is the trustee of an express trust, and, in the absence of allegation of neglect or failure of the county judge to perform the duties imposed by the bond, such complaint is fatally defective as not stating a cause of action.

4. In such case, the fact that plaintiff is beneficially interested in the execution of the trust, does not make her the real party in interest, within the meaning of sec. 2607, Stats. 1898.

5. A trust fund provided to secure the support of a married woman is property in the true sense of the term, although it be in such form that the beneficiary cannot assign, or convey, or devise it, or use it in any manner otherwise than that specified in the terms of the trust.

6. A bond, given in settlement of a bastardy proceeding, conditioned for the support of the prosecutrix and her child in consideration of the discontinuance of the proceeding, is not against public policy, since by sec. 1532, Stats. 1898, the proceeding is one proper for settlement by contract involving the discontinuance of the prosecution.

7. A bastardy proceeding is neither a civil nor criminal action, strictly speaking, but is a mere statutory proceeding.

8. The provisions of sec. 1532, Stats. 1898, requiring, in bastardy proceedings, official approval of the settlement with the mother as a prerequisite to the right of the accused to his discharge, is designed for the protection of the injured female, not of the public.

9. A settlement of a bastardy proceeding, made by the accused, without the official approval required by sec. 1532, Stats. 1898, is a waiver by him of the statute, and also by the woman, so far as she is competent in that regard.

10. A bond, given in settlement of a bastardy proceeding, conditioned for payment unless the prosecutrix and defendant "shall live together as husband and wife," is not a contract for a voluntary separation.

11. Where a bond, given in settlement of a bastardy proceeding, provided that "the amount to be paid (the prosecutrix), if the same cannot be agreed upon by the parties hereto, shall be determined by the county judge, and shall be furnished and paid in the manner and way he may designate," no right of action matures until the county judge makes his determination.

APPEAL from an order of the circuit court for Waupaca county: CHAS. M. WEBB, Circuit Judge. *Reversed.*

The substance of the complaint was as follows:

July 21, 1903, defendant William Meyer, as principal, and *Andrew* as surety, executed and delivered to the plaintiff an instrument in the following form:

"Whereas, William Meyer, of the county of Waupaca, State of Wisconsin, has been arrested and charged with seduction and bastardy upon one *Gertrude Meyer,* of the county of Waupaca, State of Wisconsin, committed on the 27th day of November, A. D. 1902.

"And whereas, in consideration of the withdrawal and abandonment of said proceedings, said William Meyer, for himself, his heirs, executors and assigns, hereby consents and agrees to marry said *Gertrude Meyer,* and support her, and any family they may have, for a period of four years, commencing from the date hereof;

"And said William Meyer, his heirs, executors and assigns, as principal, and *Andrew Meyer* for himself, his heirs, executors and assigns, as surety, do, jointly and severally agree to support and care of said *Gertrude Meyer* during the said period of four years from date;

"And in case of the failure of said William Meyer, as principal, and *Andrew Meyer,* surety, to support said *Gertrude Meyer,* and the said family, they, each and severally, hereby agree to pay to the county judge of Waupaca County, aforesaid, the sum of Five Hundred Dollars, or so much thereof as may be necessary to be used for the support of said *Gertrude Meyer* and said family, during the balance of said period of four years.

"The support of the said *Gertrude Meyer,* and the amount to be paid her, if the same cannot be agreed upon by the parties hereto, *shall be determined by the aforesaid county judge, and shall be furnished and paid in the manner and way he may designate,* but not to exceed the sum of One Hundred and Twenty-five Dollars in any one year, *except the first,* which shall be determined by said county judge, if need be, said payments to be made in cash installments, monthly, unless said *Gertrude Meyer* and William Meyer shall live together as husband and wife.

"In witness whereof, the said William Meyer, principal, and *Andrew Meyer,* surety, have hereunto set their hands and seals this 21st day of July, A. D. 1903.

                    "WILLIAM MEYER, Principal.
                    "ANDREW MEYER, Surety.
                    "GERTRUDE MEYER.

"In presence of
    "LLEWELLYN COLE,
    "CONRAD MEYER."

The defendant William Meyer has failed to comply with the provisions of such instrument in that he has refused to support plaintiff *Gertrude Meyer* and her child, otherwise than by payment to her of $10 July 28, 1903, on which date said defendant abandoned the plaintiff and since which time he has not visited her nor in any manner contributed to her support or the support of her child. Said defendant *Andrew Meyer* has failed to comply with the conditions of such instrument and refused to do so, otherwise than by the payment to plaintiff of $15 October 1, 1903, and $10 November 20, 1903.

August 19, 1903, a child was born to plaintiff and said William Meyer. She has incurred expenses necessary to the support of herself and child since the making of the said instrument, to the amount of $100. She has exhausted all her means in caring for herself and child and is now unable to work and support either herself or the child. She has repeatedly requested defendants to comply with the conditions of the aforesaid agreement, but they have neglected and refused to do so, except as aforesaid. By reason of the breach of said agreement on the part of defendants, plaintiff has sustained damages to the amount of $500. She demands judgment requiring defendants to pay to the county judge of Waupaca county, Wisconsin, $500, to be used for the support of herself and her child, according to the terms of said agreement, and judgment for costs and disbursements in this action, and such other and further relief as may be just.

Defendant demurred on three grounds, viz.: 1. Want of legal capacity to sue. 2. A defect of parties plaintiff, in that if there be a cause of action upon the instrument described in the complaint, it is in favor of the county judge of Waupaca county, Wisconsin. 3. For failure to state facts sufficient to constitute cause of action.

The demurrer was overruled generally with leave to answer within thirty days on payment of $10 costs. Defendant *Andrew Meyer* appealed.

For the appellant there was a brief by *George Hoxie,* attorney, and *Kreutzer, Bird & Rosenberry,* of counsel, and oral argument by *C. B. Bird.*

For the respondent there was a brief by *Olen & Olen,* and oral argument by *O. L. Olen.*

MARSHALL, J. Several questions are presented by appellant's counsel for consideration. An affirmative answer to either of them will be sufficient to condemn the complaint on one of the grounds of demurrer insisted upon. We will state *verbatim,* or in effect, each of counsel's propositions, and consider the same.

1. Has plaintiff legal capacity to sue in view of the disabilities of married women?

The first answer thereto is, the complaint is entirely silent as to whether the plaintiff is or is not a married woman. Appellant's counsel assume, because the bond recites that the bastardy proceedings were agreed to be discontinued in consideration of an agreement on the part of defendant, William Meyer, to make the plaintiff his wife, that such agreement was consummated. That does not follow. If the marriage agreed upon occurred it is very strange that counsel omitted to plead it in some way. The second answer to the question is, conceding that plaintiff is a married woman, the beneficial right under the bond is her sole and separate property in regard to which she is expressly authorized by statute to sue in

her own name. Sec. 2345, Stats. 1898. The third answer, making the concession as before, is that the husband is an adverse party, in which situation a married woman is expressly authorized to sue in her own name by sec. 2608, Stats. 1898.

2. Is there a defect of parties plaintiff, in that a cause of action upon the bond, if any there be, is in favor of the county judge as trustee of an express trust?

The answer to that is, if it be true that respondent only has a beneficial interest in the bond, while the legal right to sue on it is in the county judge, the error in proceeding upon an inconsistent theory goes to the cause of action, not to a defect of parties plaintiff. If, as appellant contends, the bond in effect runs to the county judge as trustee of an express trust, then, of course, he is the holder of the legal title to the trust fund,—is the proper party to sue to recover the same and without joining with him the respondent. Sec. 2607, Stats. 1898. A *cestui que trust* cannot sue to enforce a trust, except in case of necessity, by reason of failure, or refusal, or inability of the trustee to perform his duty in that regard. In that case the trustee is a necessary party, and a failure to make him such renders the complaint open to attack for defect of parties. Obviously the pleader did not proceed on that theory as the complaint is silent as to any reason why the action was brought in the name of the *cestui que trust*.

3. Does the complaint state facts sufficient to constitute a cause of action?

On that subject several points are made by counsel.

(a) No cause of action is stated in favor of the plaintiff or any one because the legal title to proceed upon the bond, if there be any, is in the county judge. We see no escape from that proposition. The meaning of this language is unmistakable:

"In case of failure of said William Meyer, principal, and *Andrew Meyer*, surety, to support the said *Gertrude Meyer* and the said family, they each and severally agree to pay to

the county judge of Waupaca county, aforesaid, the sum of five hundred dollars, or so much thereof as may be necessary," etc.

The evident purpose of the instrument was to make the county judge the trustee of the fund mentioned therein, with the right to call the same in for disbursement for respondent's benefit, as in his judgment that might be deemed proper. The whole sum of $500 was not promised to be paid absolutely, but only "so much thereof as may be necessary, to be used for the support of said *Gertrude Meyer,*" etc. To be used by whom? By the county judge, manifestly. Therefore he was not only expected to ask for, receive and recover the fund, but active duties on his part of a discretionary character were contemplated, viz.: To determine the amount and manner in which the fund should be used for the benefit of respondent.

Few principles are better understood than the one above adverted to, viz.: That the trustee of an express trust only can sue to defend or recover the trust fund, except where he neglects or refuses to perform his duty in that regard, and then the *cestui que trust* may sue, joining the trustee as plaintiff or defendant, as the case may require. As plaintiff, generally speaking, but when he is adversely interested or refuses to let his name be used, then as defendant. Since there is no allegation in the complaint, as before indicated, as to why respondent instituted the litigation, the complaint is fatally defective. The fact that she is beneficially interested in the execution of the trust does not, by any means, make her the real party in interest, within the meaning of the statute. In contemplation of law the trustee of an express trust is primarily the interested party. Before the Code he could sue in his own name, joining the *cestui que trust.* By force of the statute he is the proper party to bring the action, without joining those secondarily interested.

(b) The marriage of the parties extinguished any liability on the bond.

We may well suggest, for all that is stated in the complaint, there was no marriage. Moreover, by sec. 2341, Stats. 1898, a married woman does not, by entering into the matrimonial contract, lose to her husband the property she then possesses, or any part thereof. Counsel for appellant suggest that the word "property" as used in such section does not include a beneficial interest in a trust fund of the nature of the one in question because it does not fall within the restricted meaning of such word, given thereto in *Gibson v. Gibson,* 43 Wis. 23. There the court said that property, under the married women's act, refers only to "things which may be held, used, assigned, conveyed and devised." The force counsel attribute to the quoted expression is in the use of the conjunctive, suggesting that nothing is property, within the meaning of the statute, unless it has all the characteristics named,—unless, in the hands of the person possessing the same, it is susceptible of being "held, used, assigned, conveyed and devised." We may safely say there was error in thus joining the terms by the conjunctive. Things that may be held and enjoyed are no less property because they cannot be by the possessor "sold, assigned and devised." Substitute the disjunctive for the conjunctive in the language relied upon and it will then doubtless express the idea the court intended to convey. That seems clear upon reading the opinion on rehearing, by RYAN, Chief Justice. It is there distinctly held that the term "property" in the section under consideration includes everything covered by that term according to the statutory construction thereof in sec. 4972,—that it includes money, goods, chattels, things in action, evidences of debt and real property, but not a mere right of action, as for instance one to recover compensation for damages for defamation of character,—to recover something which when obtained will

answer to one of the species of property mentioned. With that explanation, if any were necessary, there can be no doubt but that a trust fund provided to secure the support of a woman and her family is property in the true sense of the term, though it be in such form that the beneficiary cannot "assign, or convey or devise" it or use it in any manner otherwise than that specified in the terms of the trust.

(c) The bond is against public policy.

So far as that suggestion is based on the theory that the instrument was given to secure immunity from prosecution for the crime of seduction, it needs no attention since it clearly appears not only by the instrument, but by the allegations in regard thereto, that the consideration thereof was the settlement of respondent's claim against her paramour in a bastardy proceeding, which by the policy of the statute is one proper for settlement by contract involving the discontinuance of the prosecution instituted by the woman. Sec. 1532, Stats. 1898.

True, the section referred to entitles the accused person in such a proceeding to his discharge only upon doing something more than merely to satisfy the demands of the prosecutrix, but that does not militate against her abandoning the proceedings, so far as she can, in consideration of receiving satisfaction from him.

A bastardy proceeding is neither a civil nor criminal action, strictly speaking, but is a mere statutory proceeding designed, primarily, to enable the injured female to recover of the person who, in the eye of the law, has committed a grievous injury to her, compensation therefor. *Baker v. State,* 56 Wis. 568, 14 N. W. 718; *Id.,* 65 Wis. 50, 26 N. W. 167; *Pierstoff v. Jorges,* 86 Wis. 128, 56 N. W. 735; *Barry v. Niessen,* 114 Wis. 256, 90 N. W. 166. In *Pierstoff v. Jorges, supra,* it was insisted that equity should not lend its aid to coerce the defendant into paying a judgment rendered against him in a prosecution for bastardy because the prose-

cutrix was a partner with him in crime. The contention was condemned as clearly unsound because in the eye of the law in such a case the wrongdoer is the father of the illegitimate child, and the wronged party the mother, not the public, and the statute was designed to afford her a right of action for her own benefit and protection. In *Barry v. Niessen, supra*, the court said:

"The action is not in effect a criminal prosecution, but one instituted by the mother as a proceeding to enforce the father's natural obligation to support his child, and for the benefit and protection of the mother."

In view of the foregoing the contention that the agreement in suit is void, as against public policy, clearly has no merit whatever. The provision of the statute requiring official approval of the settlement with the mother as a prerequisite to the right of the accused to his discharge, was designed for the protection of the injured female, not of the public. The purpose was to prevent the accused from intensifying the injury already inflicted upon the mother by inducing her to agree to an improvident settlement. However, a settlement, made by the accused, without such approval, is a waiver by him of the statute, and also by the woman, so far as she is competent in that regard. In any event it is no violation of public policy that can be invoked by the accused to defeat his agreement.

In *Knight v. Priest*, 2 Vt. 507, a settlement was made substantially as in this case. The mother agreed that the accused should be prosecuted no further. He was prosecuted, nevertheless, by the town and compelled to give bonds. The point was made in a suit upon the note given by him in settlement of the mother's claim that the consideration therefor had failed. The defense was rejected, the court holding that it was competent for the woman to settle with the wrongdoer for the injury to her, and that her agreement not to further prosecute him was no more than one that *she* would not fur-

ther prosecute; and that the further prosecution by the town, which she could not control, was no breach of the agreement.

Such settlements, as has well been said on many occasions, are not only dictated by the highest sentiments of honor and duty but are in entire harmony with the policy of the statute. They recognize not only a legal, but a high moral obligation on the part of the wrongdoer to repair as far as practicable the injury done by him and should be, and are, viewed by courts with high favor, rather than disfavor, as the following citations will abundantly show: *Coleman v. Frum,* 4 Ill. 378; *Robinson v. Crenshaw,* 2 Stew. & P. (Ala.) 276; *Merritt v. Flemming,* 42 Ala. 234; *Nicewanger v. Bevard,* 17 Ind. 621; *Haven v. Hobbs,* 1 Vt. 238; *Billingsley v. Clelland,* 41 W. Va. 234, 23 S. E. 812; *Davis v. Moody,* 15 Ga. 175; *Comm. v. Turner,* 4 Dana, 511; *Burgen v. Straughan,* 7 J. J. Marsh. 583; *Comm. v. Davis,* 6 Bush, 295; *Baker v. Roberts,* 14 Ind. 552; *Black Hawk Co. v. Cotter,* 32 Iowa, 125; *Maxwell v. Campbells,* 8 Ohio St. 269; *Kezartee v. Cartmell,* 31 Ohio St. 522; *Hook v. Pratt,* 78 N. Y. 371; *Holcomb v. Stimpson,* 8 Vt. 141.

A few quotations from the cited cases will strongly emphasize what has been said. In *Robinson v. Crenshaw, supra,* it was strongly urged that the settlement was contrary to public policy, and the court said:

"The principal in the note admitted himself to be the despoiler; and as such bound to repair the injury, at least, in part. Then, could there be anything illegal or *contra bonos mores,* after the perpetration of the vice, in contracting to divide the additional expense and make partial remuneration for the injury, by providing a more ample support, than the mother otherwise had, for the innocent offspring? The case would be entirely different, had the contract been made, in consideration of any illegal or immoral act, to be done in the future—such are admitted to be void; law, and public policy, imperiously require they should be so, in order to discourage them. But not so, with regard to what has already passed; a sense of honor and justice may prompt a man to contract atonement for his wrong."

Quoting further from *Turner v. Vaughan*, 2 Wils. 339, the court said:

"Where a man is bound in honor and conscience, God forbid that a court of law should say the contrary: and whenever it appears that the man is the seducer, the bond is good."

In *Coleman v. Frum, supra*, where a bond was involved, as in this case, and in an action to enforce it the point was made that it was void because based upon an illegal consideration, the court said:

"We can perceive no objection to the legality of this contract. The statute authorizing the proceedings before the justice, was intended to enable the mother of an illegitimate child to compel the father to contribute to its support. When, therefore, he acknowledges his obligation, and for the purpose of obviating the trouble and expense of legal proceedings, voluntarily stipulates to do that which he might by law be compelled to do, the ends of justice are attained, and the objects of the law are accomplished by enforcing his undertaking."

In *Jackson v. Finney*, 33 Ga. 512, a similar case, the court said:

"Forbearance by the mother to prosecute the putative father of bastard children under the bastardy laws of this state, constitutes a sufficient consideration to support a promise by such father, to pay money or settle property for the benefit of such offspring."

In *Comm. v. Turner, supra*, Chief Justice Robinson, delivering the opinion of the court, said:

"She [the mother] is neither under any civil or moral obligation to institute such a proceeding, nor is guilty of any breach of public or social duty by agreeing with the father for a conventional contribution, in lieu of the statutory remedy for coercing him."

The court held that such a settlement is valid notwithstanding the public are not precluded from prosecuting the wrongdoer, if he fails to perform his duty, concluding thus:

"Then let such men make their contracts, and perform them too. But let them also know that, if their illegitimate children are not properly maintained, the law still has power to

coerce adequate contributions from those whose natural and legal duty it was to make them without solicitation or coercion; and that, whatever they do or agree to do by voluntary contract, they depend altogether upon the honor and fidelity and personal responsibility of those with whom they negotiate. Such contracts, if fair, are not illegal."

In *Maxwell v. Campbells, supra,* in condemning a defense to an action to enforce notes given in compromise of a bastardy proceeding upon the ground of illegality, the court said:

"And had there never been any prosecution in this case, and, without the pressure of a prosecution, the defendant had voluntarily come forward and executed these notes, they would have been, as they are now, good in law, because based on the consideration of not only a moral, but also a legal obligation to provide, to some extent, for the expenses and support of both mother and child."

In *Billingsley v. Clelland, supra,* a similar case, a large number of authorities being reviewed, it was said:

"Was the compromise . . . contrary to public policy and good morals, and the notes sued on by reason thereof invalid? Whenever this question on similar notes has been fairly presented to a court of last resort, the uniform decision has been in favor of their validity, unless the compromise has been procured by fraud, or the notes include an obligation not to testify against the accused in a criminal prosecution."

4. The bond provides that the payment is to be made "unless said *Gertrude Meyer* and William Meyer shall live together as husband and wife" and hence is void under *Baum v. Baum,* 109 Wis. 47, 85 N. W. 122.

The case cited treats of a contract for a voluntary separation between husband and wife. We fail to discover any element of that kind in the agreement in question.

5. The amounts to be paid are required by the terms of the bond to be determined by the county judge before any right of action to recover the same shall mature.

There seems to be no escape from that proposition. The meaning of this language is unmistakable:

"The amount to be paid to her, if the same cannot be agreed upon by the parties hereto, shall be determined by the county judge and shall be furnished and paid in the manner and way he may designate."

Why, in view of that plain provision and the absence of any showing that a cause of action was perfected in harmony therewith, the demurrer was not only overruled but judgment was ordered for the full amount named in the bond, is not perceived. The quoted language and the fact that the complaint is entirely barren of any showing of compliance therewith, is sufficient to condemn it.

*By the Court.*—The order is reversed, and the cause remanded with directions to enter an order sustaining the demurrer, and for further proceedings according to law.