ONSRUD, Appellant, vs. KENYON, Respondent.

*September 11—October 7, 1941.*

*Alvin M. Loverud* of Stoughton, for the appellant.

For the respondent there was a brief by *Murphy & Morris* of Madison, and oral argument by *Sherman O. Morris*.

FRITZ, J. This appeal is in an action commenced on December 3, 1937, to recover from defendant the balance of $4,000 owing as principal on a promissory note for $6,000. The note was secured by a mortgage on defendant's farm homestead, and on October 5, 1940, plaintiff commenced also an action of foreclosure based on the note and mortgage. Thereupon defendant, who had filed an answer and plea in abatement to the complaint in the action commenced on the note in December, 1937, moved for the dismissal of this action on the ground that it was commenced in violation of sec. 281.22 (4), Stats. 1937, which prohibits the commencement of any action, excepting for the foreclosure of a mortgage, where the evidence of indebtedness is secured by a mortgage on real estate, until the mortgage is first foreclosed and the

incumbered property sold on foreclosure and the sale confirmed. On the hearing of the motion the principal issue was the constitutionality of the statute, and upon the evidence produced by the parties, the court concluded that the statute was valid, and that under its provisions defendant was entitled to judgment dismissing the complaint.

On this appeal from the judgment plaintiff contends that sec. 281.22, Stats., and particularly sub. (4) thereof, is unconstitutional on the grounds that it deprived a mortgage noteholder of valuable rights for a long and indefinite time without any compensating relief; that such denial of constitutional rights is justified only by a great public disaster or calamity, and then only by a law necessary and appropriate to alleviate the disastrous conditions, which affords protection to all parties and is of temporary duration; and that when sec. 281.22 (4), Stats., was enacted in 1937, no emergency amounting to a public disaster or calamity existed as a matter of fact, or if conditions of distress then existed they were not new conditions, but a continuation of conditions existing before 1931, and did not constitute an "emergency" condition; and that the provisions of sec. 281.22 (4), Stats., were not necessary to alleviate any conditions existing in 1937, or appropriate to any such conditions and do not afford protection to all parties involved, and are not limited or temporary in scope or time.

These contentions cannot be sustained. Plaintiff, as sole owner of the note and mortgage involved herein, is not deprived, as he contends, of valuable rights for a long and indefinite time. As such sole owner, he could and, on October 5, 1940, did bring an action to recover on the note and mortgage by the foreclosure thereof; and if there is a deficiency judgment upon the confirmation of a foreclosure sale, he can proceed to enforce payment thereof by attachment, garnishment, or execution as in the case of any judgment in an action based on solely the note. His contract is intact; he has not actually lost any contract right; and his property right survives. There is a change in but the order or method of procedure in that his

remedy is in part postponed, but the limitation does not exceed the bounds of reason.

As was stated in *Conley v. Barton,* 260 U. S. 677, 681, 43 Sup. Ct. 238, 67 L. Ed. 456,—

"It is recognized that the legislature may modify or change existing remedies or prescribe new modes of procedure without impairing the obligation of contracts if a substantial or efficacious remedy remains or is given, by means of which a party can enforce his rights under the contract." See also *Northwestern Mut. L. Ins. Co. v. Neeves,* 46 Wis. 147, 49 N. W. 832; *Hanauer v. Republic Building Co.* 216 Wis. 49, 54, 255 N. W. 136, 256 N. W. 784.

By express provision in sub. (1) of sec. 281.22, Stats. 1937, the effect of sub. (4) thereof (which was originally enacted in 1935) was limited to the duration of the emergency and in any event not later than April 1, 1939; and by an amendment in 1939, that date was extended to April 1, 1941. In sub. (4) of sec. 281.22, Stats., there has been since its initial enactment the provision that "This is emergency legislation," and in sub. (1) thereof there has been the legislative declaration (without any change since 1937 excepting as to the extension of time),—

"that a public economic emergency does, and continues to, exist in the state of Wisconsin. A widespread drought within the state has aggravated and made more serious the conditions already existing. This economic emergency has deprived thousands of people in this state of employment, has necessitated the expenditure of many millions of public funds within this state to prevent starvation, has thrown the burden of support of thousands on the state and nation, has destroyed property values, and has caused many of the people of this state to lose their homes, their farms and their places of business by foreclosure of mortgages or execution upon judgments, and threatens the loss of homes, lands and business which furnished those in possession the necessary shelter and means of subsistence and livelihood, and resulting in increased burdens on the state. In view of this emergency it is deemed necessary to

adopt reasonable means to safeguard and preserve through this crisis the vital economic structure upon which the good of all depends. Such measures are designated 'emergency legislation.' All laws so designated shall expire when the emergency ceases, which shall be so proclaimed by the governor, and in any event, not later than April 1, 1939, unless another date is specifically provided."

To such a legislative declaration and judgment there are applicable the rules stated by Mr. Justice STONE in *South Carolina State Highway Dept. v. Barnwell Bros., Inc.,* 303 U. S. 177, 191, 58 Sup. Ct. 510, 82 L. Ed. 734, to wit:

"Being a legislative judgment it is presumed to be supported by facts known to the legislature unless facts judicially known or proved preclude that possibility. Hence, in reviewing the present determination we examine the record, not to see whether the findings of the court below are supported by evidence, but to ascertain upon the whole record whether it is possible to say that the legislative choice is without rational basis."

Upon the hearing in the circuit court there was considerable proof in respect to farm land values, prices paid for agricultural products and farmers' purchasing power in the prewar years of 1912 to 1914, and the years following until 1940, and although there were conflicts in the evidence, it reasonably admitted finding that in this state there was a gradual rise in such values and prices until about 1921, the year in which the note and mortgage involved herein were executed, when farm values were one hundred sixty-eight per cent of the prewar level; and that there was then a decline until in 1933 and 1934 there was reached the low point in farm values and they were but eighty per cent of prewar values, and that although there were some fluctuations in March, 1940, they were still but eighty-four per cent thereof, which was still but half of the values in 1921. In view of the proof establishing the existence of such facts and other distressing economic conditions, it cannot be said that there was no rational basis for the legislative

declarations in enactments in 1935 to 1939 as to the continuing existence of the disastrous and distressing conditions and the consequent public economic emergency stated therein. Whether under the facts known to the legislature the existing conditions constituted such an emergency, the extent and effect and duration thereof, and what relief by legislation was necessary and appropriate to alleviate the disastrous consequences and afford due protection to all parties concerned, were matters to be determined by the legislature, and its judgment is presumed to be supported by facts within its knowledge, unless facts are proven that preclude that conclusion.

It is not necessary, as appellant contends, that great and public disaster or calamity result in order to constitute such an emergency as to justify the enactment, in the exercise of the police power, of a temporary legislative limitation on the exercise of a contractual right. An emergency justifying such legislation may exist when there is a great and public need for such relief, although it does not constitute a great public disaster or calamity. As the court said in *Home Building & Loan Asso. v. Blaisdell,* 290 U. S. 398, 439, 54 Sup. Ct. 231, 78 L. Ed. 413,—

"The reservation of state power appropriate to such extraordinary conditions may be deemed to be as much a part of all contracts, as is the reservation of state power to protect the public interest in the other situations to which we have referred. And if state power exists to give temporary relief from the enforcement of contracts in the presence of disasters due to physical causes such as fire, flood or earthquake. That power cannot be said to be nonexistent when the urgent public need demanding such relief is produced by other and economic causes." See also *Hanauer v. Republic Building Co., supra,* p. 57.

The mere fact that the distressing conditions which existed at the time of the re-enactment of sec. 281.22, Stats. 1937 and 1939, are the continuation of the abnormal conditions which

first gave rise to the emergency and the resulting great and public need that necessitated alleviation by this emergency legislation when it was first enacted in 1935, does not impair the legislative power to continue to re-enact such legislation to protect the public against continuing disastrous consequences of the abnormal conditions because of which such alleviation is considered still necessary and appropriate by the legislature. The period during which that may be exercised cannot be limited to merely the earlier stage of the abnormal conditions which necessitated such remedial legislation when the emergency first arose, when there is a rational basis for the legislative finding that because of conditions which are still abnormal, the emergency is still in being and there is still great and pressing public necessity for such alleviation.

In support of his contentions appellant relies upon the decisions in *First Trust Joint Stock Land Bank v. Arp,* 225 Iowa, 1331, 1335, 283 N. W. 441, 120 A. L. R. 932, and *First Trust Co. v. Smith,* 134 Neb. 84, 277 N. W. 762, in which re-enactments in 1937 of the provisions of prior moratorium acts were held unconstitutional. In the Nebraska case the factual and legislative situation existing at the time of the re-enactment and continuing thereafter was examined by the court and was held to be insufficient to constitute such a temporary emergency as was considered necessary to justify the legislation. In the Iowa case the court reached a similar conclusion, and apparently determined that the temporary emergency no longer continued to exist "by record facts, history of current events, and common knowledge and information." On the other hand, in *Wilson B. Co. Liq. Corp. v. Colvard,* 172 Miss. 804, 817, 161 So. 123, the court, in sustaining as constitutional a moratorium act enacted in April, 1934, and in passing upon the issue as to whether there existed at the time of the enactment such an urgent emergency as justified its passage, concluded that, although the evidence tended to show that at the time this act was passed, the price of farm products had ad-

vanced and business conditions had materially improved over ·those existing during the four years immediately preceding, the court could not say—

"from our knowledge of conditions, or from the evidence in this record, that the legislature had no basis in fact for its conclusion that an economic emergency then existed which called for the exercise of the police power to grant relief."

Likewise, because of similar considerations in the case at bar, we cannot say that the legislature had no rational basis for its declaration that the economic emergency and the conditions stated in sub. (1) of sec. 281.22, Stats., did continue to exist and necessitate the re-enactment of the act in question.

*By the Court.*—Judgment affirmed.

FOWLER, J. (*dissenting*). I think the judgment of dismissal should be reversed. The legislation relied on to support the judgment to my mind clearly violates the provision of the constitution of the United States that forbids a state legislature from enacting a statute that impairs the obligation of contracts. The contract here in suit was entered into prior to the enactment of the statute relied on. It is my understanding that it is such legislation as is here involved that the constitutional provision referred to was inserted to prevent. I understand it was the purpose of that provision to prevent the enactment of such statutes as were passed by some of the states for relief of debtors during and following Shays' Rebellion and like disturbances in other states that preceded the adoption of the constitution. If that idea be historically correct, I am unable to see how, if proper consideration were given to it, the *Blaisdel Case,* 290 U. S. 398, 54 Sup. Ct. 231, 78 L. Ed. 413, which is the basis for the justification of the moratorium statutes recently enacted in the several states, could have been decided as it was. But we must take that case as the law and measure the instant statute by the yardstick it prescribed.

Statutes that affect remedies fall within the contract clause of the constitution, although they do not directly change the terms of the original contract. *Cleary v. Brokaw,* 224 Wis. 408, 272 N. W. 831; *St. Joseph's Hospital v. Maternity Hospital,* 224 Wis. 422, 272 N. W. 669, 273 N. W. 791. Any statute that substantially lessens the value of a pre-existing contract so falls. *Pawlowski v. Eskofski,* 209 Wis. 189, 244 N. W. 611. That the instant statute substantially lessens the value of notes secured by mortgage executed prior to their execution is hardly subject to denial.

It was held in the *Blaisdel Case, supra,* in respect of the Minnesota moratorium statute, that such a statute can only be constitutional if it is temporary in its application, and that whether the emergency exists on which its operation depends is always open to judicial inquiry. The suspension of the remedy involved in the *Blaisdel Case* was limited to two years, and the emergency existing in 1933 when the act was passed had begun in 1932. It is also held in the *Blaisdel Case* that the provision making the suspension of the remedy conditional on paying a sum equal to the rental value of the mortgaged premises during the extended period saved the statute from being unconstitutional because it thereby prevented the mortgagee from being deprived of the use of the mortgaged property during that period without compensation. And it was held in *W. B. Worthen Co. v. Kavanaugh,* 295 U. S. 56, 55 Sup. Ct. 555, 79 L. Ed. 1298, that a moratorium statute affecting mortgages was unconstitutional as violative of the contract clause that extended by a minimum two and a half years and a maximum of six and a half years, the time by which a mortgagee might be deprived of interest on the debt and possession of the mortgaged property in case of foreclosure and sale. It is held in *First Trust Co. v. Smith,* 134 Neb. 84, 277 N. W. 762, and *First Trust Joint Stock Land Bank v. Arp,* 225 Iowa, 1331, 283 N. W. 441, 120 A. L. R. 932, that moratorium statutes enacted in 1935 and 1937 ex-

tending the application of a moratorium statute enacted in 1933 were unconstitutional as not involving temporary conditions and as being unreasonable in their period of continuance.

As counterbalancing the Nebraska and Iowa cases above cited the opinion of the court cites *Wilson B. Co. Liq. Corp. v. Colvard,* 172 Miss. 804, 161 So. 123. It is to be noted that that case was decided by the supreme court of Mississippi in April, 1935. The statute involved in that case like the instant one was grounded on the emergency commencing in 1932. It is a long stretch from April, 1935, to January, 1941. To hold an emergency commencing in 1932 continued to 1934 when the Mississippi act was passed, or to April, 1935, when the case cited was decided by the supreme court, is an entirely different matter from holding that the 1932 emergency continued until 1941. In one case a continuance of two or three years at most was involved. The instant case involves a continuance of nine years. While the lapse of two or three years might properly be held temporary under the *Blaisdel Case, supra,* which involved two years, a lapse of nine years can hardly be held so under the *Worthen Case, supra,* which voided a statute as not involving a temporary emergency which fixed a maximum suspension of remedy for nine years.

Our legislature has adopted a series of moratorium statutes like those enacted by the Iowa and Nebraska legislatures. Our legislature adopted its first such statute in 1933, and re-enacted it without change in 1935. These two statutes took away the action at law on a debt secured by mortgage and were held unconstitutional, as to a series of bonds secured by trust deeds, which bonds were transferable by holders and which deeds gave the right of foreclosure only to the trustee. The ground of the holding was that the statute of 1933 did not place a limit to the time during which the right to bring the action at law was suspended. *Hanauer v. Republic Bldg. Co.* 216 Wis. 49, 255 N. W. 136, 256 N. W. 784. It was also so held as to

ordinary mortgages in *First Nat. Bank of Neenah v. W. J. Durham L. Co.* 216 Wis. 66, 256 N. W. 783. In 1937 and 1935 the statute was re-enacted and a limit of two years was fixed for the suspension. The 1937 act recited at length a number of assumed conditions constituting the emergency involved, including among others the drought in Wisconsin of 1936 and extended the suspension another two years. In 1939, the 1937 act was extended another two years. The 1939 act contains the same recitals of conditions creating the emergency contained in the 1937 act, but omits drought. In 1939 and 1941 the act was extended for another two years by both statutes and the 1941 act recites practically the conditions of the 1939 statute as creating the emergency. All these statutes in describing the conditions constituting the emergency hark back to the depression of 1932, and in effect declare those conditions as still continuing, and their assumed continuance constitutes the basis for the several enactments. The 1937 statute was in force when the instant suit was started. The 1939 act was in force when the judgment of dismissal involved was entered, and the 1941 act was passed a few days after entry of the judgment. The 1937 act was doubtless constitutional if for no other reason because of its inclusion of the local drought as reason for the continued suspension of the right of the action at law. But the 1939 act was in force when the judgment was entered, and there was no drought in 1937 and 1938 and drought is omitted as a condition constituting the emergency declared in 1939. The 1939 act being in force when the judgment was entered, became the basis of the dismissal. If it was unconstitutional it afforded no lawful basis, and the dismissal was erroneous. I think it too plain to permit of reasonable controversy that the emergency which is the assumed basis of the act of 1939 began in 1932 and that eight or nine years is too long a stretch for a mere "temporary" emergency to exist; it is an unreasonable time to suspend a right of action on the debt secured by the mortgage and the

remedies of attachment, garnishment, and execution incident to that action on the ground of an assumed continuance of the original emergency.

It is implied in the *Blaisdel Case, supra,* that if the emergency that forms the basis of a moratorium statute has expired when a case coming under its terms is tried the statute cannot be applied. It seems to me that the evidence in this case, received without objection, shows beyond reasonable controversy that on January, 1941, when the instant case was decided by the circuit court, the "emergency" of 1932 that resulted in the original enactment of sec. 281.22 (4), Stats., had passed. If the legislature in 1939 and 1941 had had before it this evidence, it could not have reasonably considered that the emergency of 1932 still continued or that any emergency in the farm situation existed in 1939 or 1941. It is quite true that the situation of farmers, who bought farms during the inflation of farm values in the 1920's when prices were nearly double the norm of 1910 to 1914, and incumbered them for half or more of the purchase price, is now deplorable. But their condition is permanent, not temporary. Their situation cannot be considered one of emergency, and emergency legislation cannot relieve it even if permanently continued. As to prices of farm products and prices of necessities the farmer must purchase, they had risen in 1937 and 1939 from the low point of sixty-four to sixty-seven in 1932 to practically the norm of 1910 to 1914. One who purchased city property at boom prices, and mortgaged it for the purchase price to the extent stated, is in general in no better, but even worse condition, than the farmer. His situation is also permanent and further suspension of the remedial rights of his creditor cannot help him.

It is further to be considered that the instant statute suspending the remedy of suit on the mortgage debt, and its incidental rights of attachment, garnishment, and execution, gives no compensatory remedial rights in place of them. This

brings the statute under the condemnation of the *Blaisdel Case, supra,* above stated as implied, and fails to bring it under the rule of the *South Carolina State Highway Dept. Case,* 303 U. S. 177, 58 Sup. Ct. 510, 82 L. Ed. 734, which involved a statute taking away one remedial right and giving another in its place. One remedial statute or provision may be abolished and made applicable to existing contracts if another remedy reasonable in its provisions be given in its stead, but nothing whatever is given by the instant statute in place of the remedy suspended.

For the above reasons briefly stated I am of opinion that the judgment of the circuit court should be reversed. If the legislature wants to declare sub. (4) of sec. 282.22, Stats., a permanent statute which will then make it apply only to contracts entered into subsequent to its declaration, it will be well within its province to do so. But it should respect the plain mandate of the United States constitution, sec. 10, art. I : "No state shall . . . pass any . . . law impairing the obligation of contracts." It cannot by the subterfuge of declaring what is permanent merely temporary avoid and evade that mandate.