### Petition of OLESON

HOME OWNERS' LOAN CORP., Appellant, v. OLESON, Respondent

(3 N. W.2d 880.)

(File No. 8466. Opinion filed May 14, 1942.)

**Ray E. Dougherty,** of Omaha, Neb., and **Louis N. Crill** and **Eugene C. Mahoney,** both of Sioux Falls, for Appellant.
**N. A. Boe,** of Sioux Falls, for Respondent.

RUDOLPH, P. J. The mortgagee in this proceeding has appealed from an order of the Circuit Court extending the period of redemption from a mortgage foreclosure sale. The facts disclose that petitioner mortgaged certain real property in Minnehaha County to the appellant in October, 1933. Thereafter a default occurred under the terms of the mortgage and the property was sold at foreclosure sale in April, 1937. Sheriff's certificate of sale was issued to appellant. In May, 1938, an order was made by the Circuit Court under the provisions of Ch. 207, Laws of 1937, extending the period of redemption until the 1st day of March,

1939. In May, 1939, a further extension was granted until March 1, 1941, under the provisions of Ch. 145, Laws of 1939. This present order was granted under Chap. 163, Laws of 1941, and extended the redemption period until March 1, 1943. The original mortgage was to secure a debt in the amount of $3,633.46, which at the time of the foreclosure proceedings in 1937 had increased until there was due under the terms of the note and mortgage, the sum of $4,199.32 and there is now due and owing the sum of $4,672.

■■ Under the record as presented to this court, there is but one question involved and that is whether the said Ch. 163, Laws of 1941, is constitutional. It is appellant's position that on March 21, 1941, the date the last order extending the period of redemption was granted and the order from which this appeal is taken, there was no emergency in the state of South Dakota justifying the Circuit Court in giving effect to the said law. It is clear under the rule announced in the case of Home Building & Loan Ass'n. v. Blaisdell et ux., 290 U. S. 398, 54 S. Ct. 231, 243, 78 L. Ed. 413, 88 A. L. R. 1481, that the legislature of this state, in the exercise of its police power, could give temporary relief from the enforcement of contracts when urgent public need demanding such relief is produced by economic causes. In other words, under the rule announced in that case the existence of an emergency brought about by economic causes temporarily justifies the type of legislation that is here involved. However, under the rule announced in that case "the operation of the statute itself could not validly outlast the emergency" and if upon March 21, 1941, the date this order was granted, there was no emergency within the meaning of the Blaisdell case, this law must be declared invalid and the Circuit Court without power to extend the redemption period. It becomes necessary, therefore, for this court to determine whether in March, 1941, there was an emergency within the meaning of the Blaisdell case which would give validity to the 1941 act. While the declaration by the legislature as to the existence of the emergency is entitled to great respect, it is not conclusive, and it is always

open to judicial inquiry whether the exigency exists upon which the operation of the law depends. Home Building & Loan Ass'n. v. Blaisdell, supra.

The conditions which gave rise to this moratorium legislation not only in South Dakota but throughout the northwest are well described by the Iowa court in the case of First Trust Joint Stock Land Bank v. Arp, 225 Iowa 1331, 283 N. W. 441, 442, 120 A. L. R. 932, as follows: "Banks were closed; home owners and farm owners were being ousted from their homes and farms through foreclosure proceedings; farm strikes existed; open, defiant and militant resistance to courts and court orders and decrees was in evidence; labor was unemployed; there was scarcely any price or market for farm products; and the health and social welfare of the people, as well as the sovereignty and perpetuity of organized government, was seriously menaced and in the balance."

■ No extended discussion is necessary in support of the statement that the conditions described above were no longer the conditions existing in South Dakota in March, 1941. The public records of the United States Department of Agriculture and the South Dakota Department of Agriculture disclose that farm income in South Dakota approximated $72,000,000 in 1933. Through the years following 1933 there was a gradual improvement. The year 1940 produced a total income to the farmers of this state of more than $148,000,000 or over twice that produced in 1933. According to the report of the Superintendent of the Banks of this state, bank deposits in South Dakota had increased from approximately $23,000,000 in 1933 to approximately $43,000,000 as of December 31, 1940 and on December 31, 1941 these deposits had increased to more than $53,000,000. These public records further show that the production of all grain crops and feed crops for 1940 were well above those of 1939 and the 1928 to 1939 average. On March 4, 1941, the ratio of farm prices received to farm prices paid was 95% of the 1910 to 1914 average and this figure had increased until on May 1, 1942 it reached 125%. We also take judicial notice of the fact that generally throughout the state

the delinquent tax situation has greatly improved and as stated by the Minnesota court in the case of Frissell Co. et al. v. O'Brien et al., 204 Minn. 398, 283 N. W. 756, 757, "Judicial notice should be taken of the fact that borrowing conditions have greatly improved during the past few years, * * *".

As early as February, 1938, the Nebraska court in the case of First Trust Co. of Lincoln v. Smith et al., 134 Neb. 84, 277 N. W. 762, held the Nebraska moratorium legislation unconstitutional for the reason that the temporary emergency which furnished the occasion for the exercise of power by the Nebraska legislature to enact such legislation, had ceased to exist in Nebraska. A year later, in January 1939, the Iowa court in the case of First Joint Stock Land Bank v. Arp, supra, held that conditions in Iowa no longer justified the legislation. The Arizona court in April, 1940, found conditions in Arizona to be such that the court refused to give effect to similar Arizona legislation. Pouquette v. O'Brien, 55 Ariz. 248, 100 P.2d 979.

■■ A dissenting voice comes from Wisconsin in the case of Onsrud v. Kenyon, 238 Wis. 496, 300 N. W. 359. The Wisconsin court seemingly laid stress on the fact that the mortgage there involved was given in 1921 when farm and produce values were extremely high following the World War. But this type of legislation cannot be justified on the basis that without its protection some individual will suffer a hardship. As stated in the case of Equitable Life Assurance Society v. Pendar, 65 S. D. 376, 274 N. W. 553, 555: "The legislation is not for the mere advantage of any particular individual but for the protection of basic interests of society."

We are inclined to agree with the dissenting opinion in the Wisconsin case [238 Wis. 496, 300 N. W. 364] wherein it is said with reference to the individual or class of individuals who purchased farms during the inflation of farm values during the 1920's and encumbered them with large mortgages that "Their situation can not be considered one of emergency and emergency legislation can not relieve it even if permanently continued." We believe also that we are

entitled to take judicial notice of the fact that in South Dakota most of the loans made during that inflationary period have now and had in 1941 been largely settled, compromised or adjusted; in the vernacular of the banker such loans "have gone through the wringer" and the widespread confusion and hardship resulting from such excessive loans has largely disappeared. While we do not believe it material we simply mention that the instant facts disclose that this mortgage loan was made in 1933, virtually at the bottom of the depression, and it is hardly subject of dispute that present conditions are a vast improvement over the conditions existing at the time this present contract was made, and from which petitioner is seeking relief on the grounds that emergent economic conditions justify such relief.

■ The view is advocated that even if conditions as they existed in 1933, continue for a period of six, eight or ten years that such conditions then cease to be a temporary emergency within the meaning of the Blaisdell case and assume the character of a status from which the legislature is powerless to afford relief. Whether this view is sound we need not determine in this case. We are satisfied that there is no present temporary emergency in South Dakota, such as there was immediately preceding and following 1935 when this legislation was first enacted. We do not profess to say that South Dakota has reached an era of great prosperity. All we say is that from the facts as they appear, conditions in South Dakota have vastly improved over the conditions as they existed in 1933, and that while it appears that the improvement is continuing, nevertheless, the last few years have witnessed a condition of more or less stability, and not emergency such as is necessary to give validity to the legislation here involved. A continued enforcement of the provisions of this 1941 law would be violative of the contract provisions of the Federal and State Constitutions. Const. U. S. art. 1, § 10; Const. S. D. art 6, § 12.

The order appealed from is reversed. No costs will be taxed.

All the Judges concur, except WARREN, J., not sitting.