SMAZAL, Appellant, v. ESTATE OF DASSOW, Respondent.*

*March 4—March 31, 1964.*

* Motion for rehearing denied, with costs, on June 2, 1964.

For the appellant there was a brief by *Nikolay, Jensen & Scott* of Colby, and oral argument by *Frank L. Nikolay.*

For the respondent there was a brief by *Giles & Krug* of Medford, and oral argument by *Charles G. Giles.*

GORDON, J. In sustaining the demurrer to the complaint of Clara Smazal, the trial court determined that the alleged contract between Clara Smazal and the putative father did not conform to the provisions of sec. 52.28, Stats. We agree with that conclusion.

In the instant case, the alleged agreement was oral, and the putative father had died before Clara Smazal attempted to obtain legal enforcement of the alleged agreement. Nevertheless, we consider that the impact of sec. 52.28, Stats., would be applicable even if the agreement were in writing and even if the claimed father were alive. This is because sec. 52.28 by its own language is broad enough to cover all settlement agreements between an alleged father and the mother of an illegitimate child. The statute provides that "no other agreement or settlement of any paternity proceeding shall be valid," and we believe that the legislature intended thereby to bar enforcement of those arrangements which did not comply with the statutory plan.

There is a sound public policy behind a statutory plan which requires that all such agreements be drawn by the district attorney and approved by the court. In this manner the public interest is fully protected. This technique is the one which will best protect the illegitimate child. Compliance with the statute will prevent, on the one hand, any unreasonable imposition upon the putative father by a conniving mother; on the other hand, it will avoid the acceptance of an improvident financial arrangement on the part of a woman who may be as naive fiscally as she had been sexually. See Kenney, Illegitimacy Under the Children's Code,

14 Marquette Law Review (1929), 26, 27. We conclude that the legislature intended to make the settlement technique provided for under sec. 52.28, Stats., an exclusive remedy.

In *State v. Olson* (1929), 198 Wis. 197, 200, 223 N. W. 449, this court held that a payment made to the mother of an illegitimate child, which payment did not comply with the statute, did not relieve the father of his obligation to support the child.

The appellant suggests that there has been a waiver; she contends that by entering into the agreement both parties waived the provisions of sec. 52.28, Stats. In support of this theory, Clara Smazal relies on *Meyer v. Meyer* (1905), 123 Wis. 538, 102 N. W. 52. We consider that the *Meyer Case* is not controlling because the statute involved in that case was substantially different from the present statute, and the considerations which led the court to the waiver theory in the *Meyer Case* do not apply under the present statute. Furthermore, after exploring the overriding considerations of public policy which apply in connection with illegitimacy settlements, this court in *Francken v. State* (1926), 190 Wis. 424, 440, 209 N. W. 766, modified the *Meyer Case* insofar as it related to waiver.

The appellant also urges that she and Mr. Dassow had a constitutional right to enter into their contract and that if sec. 52.28, Stats., be construed as an exclusive remedy, such legislation, she contends, would be an unconstitutional impairment of their right to contract. The answer to this argument is that legislation which is grounded on important considerations of public policy may constitutionally circumscribe the right to contract. The paternity statutes are not unlike other modern social legislation such as the laws which are designed to promote industrial peace. See *J. I. Case Co. v. National L. R. Board* (1944), 321 U. S. 332, 337, 338,

64 Sup. Ct. 576, 88 L. Ed. 762. It has also been held that the legislature may modify existing remedies or prescribe new modes of procedure without impairing the obligation of contracts if a substantial remedy for enforcement remains. *Onsrud v. Kenyon* (1941), 238 Wis. 496, 500, 300 N. W. 359. See also *Conley v. Barton* (1923), 260 U. S. 677, 681, 43 Sup. Ct. 238, 67 L. Ed. 456.

Sec. 52.28, Stats., was already a part of the law of Wisconsin at the time Clara Smazal and Mr. Dassow allegedly entered into their agreement; the statute cannot be said to have impaired the obligation of their contract. *Chippewa Valley Securities Co. v. Herbst* (1938), 227 Wis. 422, 278 N. W. 872.

We conclude that the trial court properly sustained the demurrer since the alleged contract was not entered into in compliance with the statute which furnished the exclusive procedure for the creation of an enforceable contract for the support of an illegitimate child between the mother and the putative father.

*By the Court.*—Order affirmed.

BEILFUSS, J. (*dissenting*). I respectfully dissent. The majority holds that sec. 52.28, Stats., furnishes the exclusive procedure for a mother and putative father to contract for the support of an illegitimate child. In my view, the statute applies only to contracts intended to settle or bar paternity proceedings. I would draw a distinction between those contracts and the one before us, which was not made in consideration of an agreement to forbear from instituting paternity proceedings.[1]

---

[1] Such contracts have long been recognized in the law. See 10 Am. Jur. (2d), Bastards, p. 897, sec. 70: "Contracts binding a putative father to provide for or support his illegitimate child do not offend public policy or good morals, but rather accord with the policy of the law, especially where the putative father is under a statutory duty to support his illegitimate child."

This case arises on demurrer. According to the old, familiar rule, facts pleaded in the complaint are admitted. Among these facts are that deceased admitted paternity of the child and promised to pay for its support until such time as he and plaintiff could be married. I see no reason in policy why the language of the statute should be extended beyond its clear application to proceedings instituted under secs. 52.21 to 52.45, Stats. No interest of the public, the mother, or the child is offended; paternity proceedings are not barred by the contract. An agreement for support of an illegitimate child by weekly payments until such time as the mother and putative father can be married does not raise a probable or even possible inference of blackmail.

At common law the mother, not the father, was responsible for the support of an illegitimate child. By statute, the father, if determined, is primarily responsible and the mother secondarily.

The purpose of ch. 52, Stats., is to assure, as its title states, "Support of Dependents." [2] It was enacted to protect the child and to relieve the public of responsibility of support. For this purpose the agreement, in order to relieve the putative father, must be approved by the court and drawn by the district attorney.

I cannot read into sec. 52.28, Stats., a prohibition preventing the mother from contracting with the putative father to protect herself against her liability for the support of the child. The state, through the district attorney, can insist upon a proceeding that will result in a contract or judgment to protect the interests of the child and the public which would supersede or supplement a contract between the mother

---

[2] "52.45 CONSTRUCTION OF SECTIONS 52.21 TO 52.45. Sections 52.21 to 52.45 shall be so interpreted and construed as to effectuate the protection and welfare of the child involved in any proceedings hereunder."

and putative father, but in the absence of such statutory contract or judgment I see no reason of public policy prohibiting the enforcement of the contract between the mother and putative father.

The plaintiff may well have some difficult problems of proof at trial; we are not reviewing the trial but merely examining the complaint to determine whether it states a cause of action. I would hold it does and reverse the order of the trial court.

I am authorized to state that Mr. Justice HALLOWS joins in this dissent.