Annette L. GERHARDT, as Guardian ad Litem for Heather Jo Krueger, Plaintiff-Appellant,

v.

ESTATE OF Arlen L. MOORE, Defendant-Respondent.

Supreme Court

*No. 85–0943. Argued May 28, 1987.—Decided June 26, 1987.*

(Also reported in 407 N.W.2d 895.)

For the plaintiff-appellant (in the court of appeals) there were briefs by *Annette L. Gerhardt* and *Conway, Conway & Gerhardt, S.C.,* Baraboo and oral argument by *Annette L. Gerhardt.*

For the defendant-respondent (in the court of appeals) there was a brief by *Gary Alan Hebl, Donna M. Desmond-Hebl* and *Hebl, Hebl, Hebl & Desmond-Hebl,* Sun Prairie and oral argument by *Gary Alan Hebl.*

WILLIAM G. CALLOW, J. This is an appeal from an order of the circuit court for Sauk county, Judge James R. Seering presiding, dismissing the

plaintiff's motion to compel support. This appeal is before us on certification by the court of appeals.

The court of appeals certified four issues to this court. The first of these issues, which we find dispositive of this appeal, was stated as follows:

> "Under *In re Paternity of R.W.L.*, 116 Wis. 2d 150, 341 N.W.2d 682 (1984), is an agreement entered into in 1970 pursuant to ch. 52, Stats., 1967, by a nonmarital child's mother, father and the district attorney, whereby the father admitted paternity and agreed to pay a lump sum settlement of $4,600 for support and lying-in expenses incurred as a result of the child's birth, and which provided that it constituted full and final settlement of the action, *res judicata* as to an action for child support commenced by the child in 1984?"

Because we find the resolution of this issue dispositive, we do not reach the other issues which were certified.[1]

We must determine whether Heather Jo Krueger, a child born out of wedlock, may initiate a new paternity and support action against the alleged father, where, pursuant to Chapter 52, Stats. 1967, the child's mother and father, their respective attorneys,

---

[1]The other issues certified to this court are as follows:

"If the agreement is not *res judicata* as to the child, does she have a cause of action against her father for child support? If so, must she establish paternity in her action, or can she rely on the admission of paternity in the 1970 agreement?

"If the child has a cause of action against her father for child support, may she maintain a common-law cause of action or is the action brought pursuant to sec. 767.25, Stats., and subject to sec. 767.25(5), which limits liability for past support to the period after commencement of the action?

"Does equal protection then require that marital children [will] also be able to bring actions for child support against noncustodial parents?"

the District Attorney for Dane county, and the Sauk County Corporation Counsel had previously entered into a support agreement which was complied with fully and purported to constitute a full and final settlement of all support claims. Because we conclude that the prior paternity agreement bars the present action under res judicata, we affirm the order of the circuit court.

The facts are undisputed. On September 7, 1969, Heather Jo Krueger was born out of wedlock to Betty Lou Krueger, a resident of Sauk county. Sometime thereafter, the state of Wisconsin, plaintiff, by Betty Lou Krueger, complainant, filed an action against Arlen L. Moore (Moore), a resident of Dane county, defendant, under Chapter 52, Stats. 1967, seeking to have Moore adjudicated the father of Heather Jo Krueger (Krueger) and seeking contribution for Krueger's support. On October 27, 1970, an agreement was entered into wherein Moore admitted paternity and agreed to pay a lump sum for support. The agreement was drafted and approved by a Dane county Assistant District Attorney, was signed by Krueger's mother, as complainant, Moore, as defendant, and their respective attorneys. The agreement was also approved by the Sauk County Corporation Counsel and Dane county Judge Mittelstadt. No guardian ad litem was appointed or appeared on behalf of Krueger. Findings and a judgment, based upon the agreement, were also signed by Judge Mittelstadt.

Under the settlement, the defendant agreed to pay a total of $4,600 over a period of time as a lump sum settlement for medical expenses paid by Sauk county as a result of Krueger's birth and for child support. Specifically, the settlement provided for the

payment of $3,600 in child support to be paid at the rate of $75 per month for forty-eight months, and $1,000 for medical reimbursement to Sauk county to be paid at the rate of $20 per month for fifty months. Moreover, paragraph 9 of the agreement provided as follows:

> "That this agreement and full and complete performance thereof shall constitute full and final settlement of this action, pursuant to the provisions of Chapter 52, Wisconsin Statutes, 1967."

The defendant complied with the terms of the agreement and made all payments in a timely manner. Pursuant to the agreement, and in accordance with the statute in effect in 1970, the defendant's support obligation ended with his last payment which was made in late 1974. The defendant has made no further contributions to the support of Krueger.

On November 20, 1984, Krueger, by her guardian ad litem, commenced this action against Moore (defendant), now deceased, seeking past, present, and future support. The guardian ad litem requested that the defendant pay 17 percent of his gross income from November 1, 1974, for Krueger's past, present, and future support, that he provide medical insurance, pay 50 percent of her uninsured medical bills, and name her as an irrevocable primary beneficiary on a life insurance policy. Krueger also requested that a temporary order for support be made pursuant to sec. 767.23(1), Stats. The defendant moved to dismiss the action on the ground that the petition raised issues which were previously adjudicated in their entirety; thus, the action was barred under the doctrine of res judicata.

The Sauk County Family Court Commissioner certified the motion for temporary support and the motion to dismiss to the circuit court for Sauk county. Following a hearing on the motions and the submission of briefs, the circuit court rendered a memorandum decision in which the court held that the doctrine of res judicata barred Krueger's action for support. According to the circuit court, because the defendant had complied fully with the law at the time the agreement was entered into, the defendant could not now be sued by the child for more support.

The circuit court distinguished this court's decision in *In re Paternity of R. W.L.,* 116 Wis. 2d 150, 341 N.W.2d 682 (1984), in which we held that, because a district attorney does not represent the interests of an illegitimate child in deciding whether to bring a separate paternity action, an illegitimate child has a right to bring a separate paternity action on his or her own behalf. The circuit court concluded that the independent cause of action recognized in *R. W.L.* was dependent upon the absence of a paternity determination. The circuit court stated that in *R. W.L.* a different result might have been reached if the issue of paternity had been completely resolved.

An order of dismissal was filed on May 13, 1985. Krueger appealed the order of dismissal to the court of appeals. On December 2, 1986, we accepted the court of appeals' certification of the appeal.

The issue on appeal involves a question of whether the doctrine of res judicata bars a support action by a child born out of wedlock where a prior settlement agreement, made pursuant to statutory direction, purporting to be a complete and final determination of paternity and support, has been entered into and complied with fully. The determination of whether the

doctrine of res judicata applies is a question of law. *DePratt v. West Bend Mutual Insurance Co.,* 113 Wis. 2d 306, 310, 334 N.W.2d 883 (1983). We, therefore, need not defer to the circuit court's determination. *Treiber v. Knoll,* 135 Wis. 2d 58, 64, 398 N.W.2d 756 (1987).

Under the doctrine of res judicata, "a final judgment is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings." *DePratt,* 113 Wis. 2d at 310. The purpose behind the doctrine of res judicata is to prevent multiple litigation involving the same cause of action or claim. Fairness to the defendant requires that at some point litigation over the particular controversy must come to an end. *Id.* at 311.

For an initial action to bar a subsequent action, there must be an identity of the parties or their privies and an identity of causes of action or claims in the two cases. *Id.; Leimert v. McCann,* 79 Wis. 2d 289, 294, 255 N.W.2d 526 (1977). Here, we clearly have an identity of causes of action. Both the initial paternity proceeding brought in 1970 and this action are premised on the same set of underlying circumstances. Whether there exists an identity of the parties is not as clear. Although the defendant in both actions is identical, the plaintiff in this action, Krueger, was not an actual party in the first paternity action. Thus, whether Krueger is bound by the earlier agreement depends upon whether there was a relationship between Krueger and the parties to the agreement such that one of the parties would be considered to have represented her.

Much emphasis has been placed by Krueger on this court's recent decision in *R. W.L.* in which we held that an illegitimate child has a separate cause of action (separate from the district attorney) to bring a paternity action against the alleged father. 116 Wis. 2d at 162. Relying upon our conclusion that we had previously erred in holding that the legislature provided for the virtual representation of the child in the paternity determination through the district attorney, Krueger asserts that *R. W.L.* stands for the proposition that there is no relationship between the parties in a paternity action and the child which would cause the district attorney or the mother to be recognized as representing the child. Such a conclusion reads too broad a meaning into *R. W.L.* Our determination in *R. W.L.* was that the district attorney, *in deciding whether to initiate* a paternity action, did not represent the interests of the illegitimate child. We specifically declined to address the question of whether the mother may have substantially the same interests as the child and, therefore, was the child's representative in initiating a paternity action. We did not address the question of whether either the district attorney or the mother represents the interests of the child in a paternity action.

We are satisfied that, where a mother of a child born out of wedlock entered into a court approved settlement agreement with the alleged father, pursuant to Chapter 52, Stats. 1967, the child's interests were virtually represented by the mother. In the typical settlement proceeding under Chapter 52, it was the practice for the custodial parent to speak for the child. This practice recognized the fact that the

custodial parent was best suited to understand and protect the needs of the child.

In addition, a custodial mother's interest and that of the child in a paternity proceeding are in many respects identical. Both have an interest in obtaining the father's assistance in providing for the child's support, maintenance, and education. The mother's interest in assistance from the father is very strong; any support that the father fails to provide becomes the responsibility of the mother. In this respect it can be seen that the mother's interest is more closely tied to the child than that of any other party or potential party.

We note that Sauk county's participation in the 1970 agreement provides further evidence that Krueger's interests were represented in the initial paternity action. The focus of a claim for support is providing support sufficient to meet the needs of that child. Although primary responsibility rests with the parents, in the absence of adequate support from either or both parents, it is the obligation of the county in which the child resides to support the child. Because of this residual obligation, the county's interest in the defendant father agreeing to provide the support, maintenance, and education of the child is parallel to that of the child.

The 1970 statutory procedures recognized that there were three possible parties who were obligated, in concert, to provide adequate support for a child born out of wedlock.[2] The child's interest in receiving

---

[2] Section 52.24, Stats. 1967, in providing that the district attorney may bring a paternity action if the child is or is likely to become a public charge, recognizes the county's potential obligation to support the child.

support, however, was not in which party provided support, but only that adequate support was provided. Where the parties agreed to what extent any one party would provide support, with the balance of the obligation falling upon the other parties, and that agreement receives court approval, then the child's interest has been adequately protected pursuant to the statute.

Moreover, the statutory procedure for entering into a parternity settlement was designed to protect not only the public interest but also the illegitimate child. *See Smazal v. Estate of Dassow,* 23 Wis. 2d 336, 340, 127 N.W.2d 234 (1964). Chapter 52, Stats. 1967, provides for the prosecution of a paternity action by the district attorney if private counsel is not retained, the drafting of all agreements by the district attorney, and approval by the court. Compliance with these provisions guarantees legal representation of the mother and protects against a settlement which is not in the best interests of the child.

Krueger, however, argues that, even if she was represented in the prior proceeding, the representation was so inadequate as to constitute no representation. Relying upon sec. 52.37(2)(a) and (b), Stats. 1967, Krueger asserts that all settlements were to provide for the future support of the child until age eighteen. Krueger thus argues that, because the judgment requiring payment of a total of $3,600 toward Krueger's support is "inadequate to fulfill the directive of the statute that [Moore] be chargeable for the support of the child until the age of 18," any representation was so inadequate as to have been nonexistent. Accordingly, Krueger contends that she cannot be bound by the settlement. We disagree.

Implicit in the provision of a mechanism for a paternity settlement is the recognition that parties will accept a settlement which does not provide for the full support of the child until the age of eighteen. A settlement, by its very nature, involves concessions by each party in an attempt to resolve the dispute without additional litigation. In reaching settlements, parties balance a number of competing interests, including the issue of paternity itself, the possibility of the father's absence by death or departure, the present financial position and the future income potential of the father, and present and future living expenses. Because many of these considerations are not predictable with any particularity, a lump sum settlement tends to be only an estimate which may, in hindsight, appear to be inadequate. However, where paternity is denied and the issue must go to trial, a settlement agreement may be a reasonable compromise.

We recognize that there could be compelling reasons to execute a settlement agreement, even though the amount of the settlement may appear to be low. It is important to understand that this settlement agreement was entered into in 1970. At that time, enforcement of a support award was often difficult. Moreover, the cost of living in 1970 was approximately one-third of what it is today. *See Consumer Price Index Detailed Report,* United States Department of Labor, Bureau of Labor Statistics (January, 1987). Although the settlement agreement in the present action appears, in hindsight, to be low, we are satisfied that it is not unconscionable.

We note that our recent decision in *In re Paternity of B.W.S.,* 131 Wis. 2d 301, 388 N.W.2d 615 (1986), is distinguishable from the present case. In *B.W.S.* we

concluded that under Michigan law a settlement which provided for the deposit of $3,000 in trust for the benefit of the illegitimate child, with such money to be held until the child attained age eighteen, was inadequate as a matter of law. *Id* at 314. We based this conclusion upon the fact that Michigan statutes and case law expressly provide that settlement agreements are binding only if the circuit court determines that the agreement makes adequate provision for the support and education of the child. In reaching this conclusion, we quoted the following Michigan statute:

> "'An agreement or compromise made by the mother or child ... concerning the support and education of the child shall be binding upon the mother and the child *only when the court having jurisdiction to compel support and education of the child shall have determined that adequate provision is reasonably secured by payment or otherwise* and has approved the agreement or compromise.
> "'(b) The performance of the agreement or compromise, when so approved, shall bar other remedies of the mother or child for the support and education of the child.' Section 722.713, Mich. Stats. (Emphasis added.)" *Id.* at 310.

In interpreting this section, we recognized that "[t]he key requirement for court approval of a settlement agreement under sec. 722.713, Mich. Stats., is that the circuit court determine that the agreement makes '... adequate provision for the support and education of the child....'" *Id.* at 312. This 1970 Wisconsin paternity agreement, providing for the support of Krueger, is not subject to such a requirement.

Under sec. 52.28, Stats. 1967, a judgment shall be rendered upon a general agreement which considers all factors pertinent to fairness if the judge is "satis-

fied with the terms of the agreement." In addition, sec. 52.37, Stats. 1967, provides that the defendant father *shall* pay the lying-in expenses and the cost of the action while further providing that the defendant father is only *chargeable* for the future support of the child until the age of eighteen. The statutory provision that the defendant is merely chargeable recognizes that liability is limited to the terms of the agreement or, if no agreement, then to the amount fixed by the court.

■

Because we conclude that Betty Lou Krueger virtually represented Krueger's interest in the initial paternity proceeding, we hold that there exists an identity of the parties between the initial paternity proceeding and the proceeding initiated in this action. Having previously determined that there exists an identity of causes of action, we conclude that the 1970 paternity agreement, having been complied with fully, bars the action to compel support brought in this action. We note that this result is reached regardless of whether the present action was premised on a common law right to paternity, Chapter 767, Stats., or Chapter 52, Stats. 1967.

Krueger further argues that the paternity proceedings under Chapter 52 violate the principles of equal protection. According to Krueger, if we uphold the settlement agreement, we will in effect be creating a class of children, all illegitimate, who cannot seek additional support from their fathers, while legitimate children can. This contention is without merit. Children born out of wedlock (in the absence of a lump sum settlement), like those born in wedlock, may seek additional support from their father. *See* sec. 52.38, Stats. 1967; 36 Op. Att'y Gen. 222, 224 (1947): *State ex*

*rel. Green v. Williams,* 49 Wis. 2d 752, 759, 183 N.W.2d 37 (1971). Under sec. 52.38, paternity settlements are modifiable if they provide for periodic payments. While it is true that settlements which provide for a lump sum payment may not be modified, a lump sum settlement is merely one of two types of settlements available to provide for the support of children born out of wedlock. A child born out of wedlock is not denied equal protection simply because the statutes provide an additional, optional method for satisfying a support obligation.

*By the Court.*—The order of the circuit court is affirmed.