150 Wis.2d 123 (1989)
441 N.W.2d 289
IN RE the PATERNITY OF P.J.W.: P.J.W., Petitioner-Appellant,
v.
D.A.H., Respondent.
No. 88-0052.
Court of Appeals of Wisconsin.
Submitted on briefs November 7, 1988.
Decided April 6, 1989.
*124 For the petitioner-appellant the cause was submitted on the brief of Robert O. Burr, of Madison.
For the respondent the cause was submitted on the brief of W. Dan Bell, Jr., and Bell Law Offices, S.C., of Madison.
Before Gartzke, P.J., Dykman and Sundby, JJ.
SUNDBY, J. P.J.W.,
who has reached majority, seeks a determination that D.A.H. is his father. He also *125 seeks from D.A.H. back child support from the time of his birth. Relying on Gerhardt v. Estate of Moore, 139 Wis. 2d 833, 407 N.W.2d 895 (1987),[1] the trial court dismissed P.J.W.'s action on res judicata grounds, concluding that his action is barred by an illegitimacy settlement agreement under sec. 52.28, Stats. (1967).
Because D.A.H. denied paternity, P.J.W.'s paternity could not be determined under sec. 52.28, Stats. (1967). We therefore conclude that the illegitimacy settlement agreement does not bar P.J.W.'s present paternity claim. We further conclude, however, that P.J.W. does not have a claim against D.A.H. for back child support. We therefore reverse the trial court's order in part and affirm in part.

I.

BACKGROUND
P.J.W. was born April 19, 1967. On July 26, 1967 an illegitimacy settlement agreement was filed in the clerk of court's office for Wood County. The agreement was signed by P.J.W.'s mother, her husband, and D.A.H., the alleged father. It was approved by the district attorney pro tempore, the district attorney, and the acting county judge.
By the agreement, D.A.H. denied that he was the father of P.J.W. but agreed to pay the lying-in expenses of the mother and a lump sum payment as future support *126 and maintenance of P.J.W. Simultaneously, the mother and her husband released D.A.H. from liability arising out of the acknowledged association of the mother and D.A.H., and agreed to regard and treat P.J.W. as their natural son.
P.J.W. was not represented by counsel in the proceedings nor was a guardian ad litem appointed on his behalf.

II.

THE PATERNITY CLAIM
Res judicata applies only to judgments. Black's Law Dictionary 1174 (5th ed. 1979), defines "res judicata" as "a thing or matter settled by judgment." "The doctrine of res judicata operates to bar relitigation of the same cause of action between the same parties, or their privies, where the first litigation resulted in a valid, final judgment on the merits." Juneau Square Corp. v. First Wis. Nat. Bank, 122 Wis. 2d 673, 682, 364 N.W.2d 164, 169 (Ct. App. 1985) (citation omitted). There is no evidence that a judgment was entered in the 1967 paternity proceedings.
The illegitimacy settlement agreement was filed pursuant to sec. 52.28, Stats. (1967), which provided in part:
Upon motion of the district attorney, the judge of a court of record having power to enter final judgment in paternity proceedings, being satisfied with the terms of the [settlement] agreement, shall order judgment in accordance therewith if paternity of the child is admitted. Where the paternity of the child is not admitted, after said agreement is approved by the court, it shall be filed but judgment shall not be rendered until there is a default of the payments agreed *127 upon, when, upon motion of the district attorney, judgment shall be rendered and entered forthwith. [Emphasis added.]
Section 52.37, Stats. (1967), provided for entry of judgment adjudging the defendant to be the father of the child, "unless paternity is denied in [the] settlement agreement." Sec. 52.37(1). D.A.H. denied paternity. The statute further provided: "Judgments entered upon agreement of the parties shall conform to the above unless the parties are unable to agree as to the paternity of the child, when such adjudication may be omitted." Sec. 52.37(3).
The record does not show that a judgment was entered on the illegitimacy settlement agreement. Even if a judgment had been entered, it would have been entered solely for the purpose of enforcing D.A.H.'s support obligation. Paternity would not have been adjudged based on the agreement because D.A.H. denied paternity.
[1]
Wisconsin requires that all claims arising out of one transaction or factual situation be litigated together. Juneau Square, 122 Wis. 2d at 682, 364 N.W.2d at 169. A judgment is not res judicata with respect to an issue which was not litigated in the prior litigation and could not have been litigated. Sections 52.28 and 52.37, Stats. (1967), specifically permitted the alleged father to refuse to litigate paternity in consideration of his agreement to pay the expenses of the mother's pregnancy, past care and support and future support of the child. See Smazal v. Estate of Dassow, 23 Wis. 2d 336, 342, 127 N.W.2d 234, 238 (1964) (Beilfuss, J., dissenting) (sec. 52.28 applies only to contracts to settle or bar paternity proceedings). The doctrine of res judicata does not, therefore, *128 bar P.J.W.'s action to have the paternity issue adjudicated at this time.

III.

BACK CHILD SUPPORT
D.A.H. advances two reasons why we should sustain the trial court's order dismissing P.J.W.'s claim for back child support. First, D.A.H. asserts that we must follow the precedent of Gerhardt. Second, he contends that P.J.W.'s claim for back support is barred by sec. 767.51(4), Stats. (1985-86), and case law.
Gerhardt has no precedential weight. See footnote 1. In Clark v. Jeter, ten years after her illegitimate daughter's birth, the mother filed a support complaint on the daughter's behalf in a Pennsylvania state court, naming Jeter as the father. The Pennsylvania courts held that her action was time-barred under Pennsylvania's statute of limitations. The Supreme Court reversed. The Court concluded that Pennsylvania's statute violated the Equal Protection Clause. Among other reasons, the court pointed out that a legitimate child could seek support from his or her parents at any time but the same right was denied to an illegitimate child.
[2]
Gerhardt raises an equal protection issue. In Gerhardt the court held that the illegitimate child was foreclosed by a judgment from seeking a modification of support. A legitimate child, however, may seek modification of a support judgment at any time prior to majority. Because of this equal protection question, we do not give any preclusive effect to the illegitimacy settlement agreement filed pursuant to sec. 52.28, Stats. (1967). We conclude nonetheless that P.J.W. does not state a claim for back child support.
*129 [3]
Section 767.51(4), Stats. (1985-86), provides that, "The father's liability for past support of the child shall be limited to support for the period after commencement of [the] action."[2] P.J.W. argues that this statute does not apply to the child who must wait until he or she reaches majority to bring an action. We disagree. We adopt part of the statement from Lowry v. Lowry, 118 P.2d 1015, 1016 (Okla. 1941), quoted with approval in Halmu v. Halmu, 247 Wis. 124, 132, 19 N.W.2d 317, 320 (1945), as follows:
The purpose of the order in this case was the support of the minor children. This purpose has been accomplished, and the matter of the care and custody of the minor children is finally disposed of. The force and life of the order expired on the date the youngest child attained majority.
In Marriage of Griffin v. Reeve, 141 Wis. 2d 699, 704, 416 N.W.2d 612, 614 (1987), the court overruled that part of Halmu which decided that contempt was not an appropriate means to enforce child support arrears after the child has reached majority. The Griffin court pointed out that the legislative intent expressed in ch. 767 "demonstrates the legislature's overriding concern that parents not shirk their obligation to support their children. . . . If the circuit court lacks the power to enforce child support orders through contempt after the child reaches majority, a nonpaying parent may be *130 encouraged to elude the court until the child's majority." 141 Wis. 2d at 705, 416 N.W.2d at 615.
[4]
We are not, however, presented with a case where a parent has shirked a court-ordered support obligation. There is, therefore, no need to invoke enforcement tools, including contempt or an action for debt, to insure the parent's compliance with a support order. P.J.W. does not seek to bring D.A.H. to mark with respect to a courtordered support obligation. The theory of P.J.W.'s back support action is that he was deprived of the necessities of life because the child support which his mother agreed to receive from D.A.H. was insufficient. We conclude that the purpose of the illegitimacy settlement agreement has been accomplishedP.J.W. has been supported to his majority; the "force and life" of the illegitimacy settlement agreement expired when P.J.W. attained majority.
[5]
Any child, legitimate or illegitimate, can argue that he or she has not been supported with the necessities and amenities of life. Even children not subject to support orders would, under P.J.W.'s theory, have a cause of action against a parent for depriving the child of such support as the child, in retrospect, believes would have been appropriate. If we fashion a remedy for P.J.W. along his suggested lines, there will be no sensible stopping point. We conclude that a child who has reached majority does not have a cause of action against a parent for an award or modification of child support. The trial court correctly rejected P.J.W.'s claim for back child support.
*131 By the Court.Order affirmed in part, reversed in part.
NOTES
[1] Vacated by the United States Supreme Court and remanded to the Wisconsin Supreme Court for further consideration in light of Clark v. Jeter, 486 U.S. ____. 100 L. Ed. 2d 465 (1988). Gerhardt v. Moore, 486 U.S. ____, 100 L. Ed. 2d 915 (June 13, 1988). Jeter held unconstitutional Pennsylvania's six-year statute of limitations for paternity actions. The Wisconsin Supreme Court has not reached a decision in remand.
[2] Section 767.51(4), Stats., was amended by sec. 2137y, 1987 Wis. Act 27 to limit the father's liability for past support for the period after the birth of the child. The amendment first applies to paternity actions commenced on or after October 1, 1987. Sec. 3203(10)(bm) 1987 Wis. Act 27.