1998-NMCA-067

959 P.2d 540

**Jeanne TEDFORD, Petitioner–Appellee and Cross–Appellant,**

v.

**Donald Wayne GREGORY, Respondent–Appellant and Cross–Appellee,**

v.

**Harvey TEDFORD, Third–Party Defendant–Appellee and Cross–Appellant.**

No. 18221.

Court of Appeals of New Mexico.

March 26, 1998.

Certiorari Denied May 6, 1998.

208

H.R. Quintero, Robinson & Quintero, P.C., Silver City, for Appellee and Cross–Appellant.

W.T. Martin, Jr., Law Offices of W.T. Martin, Jr., P.A., Carlsbad, for Appellant and Cross–Appellee.

Stephen E. Boatwright, Carlsbad, for Third–Party Appellee and Cross–Appellant.

## OPINION

DONNELLY, Judge.

{1} The multi-appeals in this case arise out of a suit filed by Jeanne Tedford (Jeanne) under the Uniform Parentage Act, NMSA 1978, §§ 40–11–1 to –23 (1986, as amended through 1997) (UPA), against

Donald Wayne Gregory, her alleged natural father. Jeanne's suit sought to establish paternity and to recover retroactive child support against Gregory. Gregory did not admit that he was the natural father of Jeanne, and filed a third-party claim against Harvey Tedford (Tedford), asserting that Tedford was the natural father of Jeanne. Tedford filed a counterclaim against Gregory and a cross-claim against Jeanne asserting that in the event Jeanne established her paternity claim against Gregory, Tedford should be reimbursed for the amount of child support and other monies he expended on Jeanne's behalf.

{2} Gregory raises ten issues on appeal, which we consolidate and discuss as follows: (1) whether the trial court erred in determining that he was the natural father of Jeanne and in awarding her retroactive child support; (2) whether the award of $50,000 as child support to Jeanne from Gregory is supported by substantial evidence; and (3) whether Tedford is barred from recovering reimbursement for child support from Gregory under principles of collateral estoppel, waiver, and latches.

{3} Jeanne's cross-appeal presents three issues: (1) whether the trial court erred in calculating its award of retroactive child support; (2) whether the trial court erred in refusing to award her reasonable fees and costs; and (3) whether the trial court erred in refusing to impose sanctions against Gregory.

{4} Tedford's cross-appeal asserts that the trial court erred (1) in only awarding him a portion of the monies he expended on behalf of Jeanne and in refusing to award him full reimbursement for all monies expended by him, and (2) in refusing to award him reasonable attorney fees and costs against Gregory.

{5} We affirm in part and reverse in part.

*FACTS AND PROCEDURAL POSTURE*

{6} Jeanne, who was born on September 27, 1974, brought suit on February 20, 1995, against Gregory seeking to establish paternity and to recover retroactive child support. Gregory admitted having a sexual relation-

ship with Jeanne's mother, Nina Tedford (Nina) during her marriage to Tedford, but denied that he was Jeanne's father. At the time of Jeanne's birth, Tedford was married to Nina. Tedford supported Jeanne, both during her minority and after she became an adult, believing her to be his child. Tedford also supported three other children born during his marriage to Nina. At no time before, during or after Jeanne's birth, did Nina ever inform Tedford that Jeanne was not his natural child.

{7} In November 1975, when Jeanne was fourteen months old, Tedford filed for divorce from Nina. The petition alleged that four children were born of the marriage, including Jeanne. Nina and Tedford executed a property settlement agreement in which they acknowledged that the four children, including Jeanne, were born of their marriage. The property settlement agreement settled Nina's and Tedford's respective property rights and also provided for the custody and support of the minor children. Under the agreement, Nina was granted custody of Jeanne, and Tedford was required to pay child support for Jeanne in the amount of $100 per month. The divorce decree included a finding that Jeanne was born of the marriage and also incorporated the property settlement agreement. The issues of paternity and of Tedford's obligation to provide child support for Jeanne were not in question in the divorce proceeding. No appeal was taken from the divorce decree.

{8} On December 20, 1994, when Jeanne was twenty years old, Nina filed suit in Eddy County District Court against Gregory to establish Jeanne's paternity and requesting an award of retroactive child support. Jeanne was not a party to that action. Gregory filed a motion for summary judgment asserting that Nina was collaterally estopped by the judgment in her divorce action from denying that Tedford was Jeanne's father. The district court granted summary judgment and dismissed Nina's suit.

{9} Thereafter, in February 1995 Jeanne filed a petition to establish Gregory's paternity and to obtain retroactive child support from the date of her birth under the UPA. The trial court ordered blood and genetic tests to be performed on Jeanne, Gregory, and Nina. The test results indicated a 99.9994% probability that Gregory was the biological father of Jeanne. The test results excluded Tedford as being Jeanne's biological father. Gregory stipulated to the probability of paternity, and thereafter filed a document entitled "Consent to Harvey Tedford's Acknowledgment of Paternity."

{10} At the conclusion of the trial, the trial court declared Gregory to be Jeanne's natural father and awarded Jeanne past child support in the amount of $50,000, plus post-judgment interest. The trial court also awarded $40,900.07, plus post-judgment interest, against Gregory and in favor of Tedford, as reimbursement for some of the support paid by Tedford. The trial court ordered all parties to bear their own attorney's fees and costs.

*DISCUSSION*

I. *Gregory's Appeal*

A. *Challenges to Jeanne's Claims*

■ {11} We first address Gregory's claim that the trial court erred in holding that Jeanne, an adult, has a cause of action against him to establish paternity and to recover retroactive child support under New Mexico's version of the UPA. Gregory, citing *In re Paternity of P.J.W.,* 150 Wis.2d 123, 441 N.W.2d 289 (App.1989), argues that nothing in the latter act authorizes an adult to pursue a cause of action against an alleged natural father for retroactive child support. We disagree.

{12} We find Gregory's reliance on *In re Paternity of P.J.W.* to be misplaced. Wisconsin has not adopted the UPA, and Wisconsin appears to have no statute of limitations comparable to Section 40–11–23(A) (1989) contained in this state's version of such act. Instead, the Wisconsin Court of Appeals, in *In re Paternity of P.J.W.,* construed a much more restrictive statute providing that a father's liability for past support of a child is limited to a claim for support for the period following commencement of such action. *Id.,* 441 N.W.2d at 290–91.

{13} An action to establish paternity and to recover retroactive child support against a putative natural father is expressly authorized by the provisions of the UPA. *See Padilla v. Montano*, 116 N.M. 398, 403–04, 862 P.2d 1257, 1262–63 (Ct.App.1993). Section 40–11–7(A) provides that "[a]ny interested party may bring an action for the purpose of determining the existence or nonexistence of the parent and child relationship." Similarly, Section 40–11–8(A) permits an action to determine paternity to be combined with an action for support. Section 40–11–23(A) (1989) of the UPA provides that "[a]n action to determine a parent and child relationship under the [UPA] shall be brought no later than three years after the child has reached the age of majority." The age of majority in New Mexico is eighteen years of age. NMSA 1978, § 28–6–1(A) (1973). Jeanne brought this action when she was twenty years old, and within two years after she reached the age of majority. The twenty-one-year statute of limitations of Section 40–11–23(A) applies to both paternity claims and claims for past child support. *Padilla*, 116 N.M. at 401–02, 862 P.2d at 1260–61. Therefore, her action was timely filed under the UPA, and Jeanne, in her status as an adult, is clearly an "interested party" entitled to initiate proceedings under the UPA.

*Best Interests of the Child*

■ {14} Gregory also argues that the trial court, in determining whether he was the natural father of Jeanne and whether he should be required to pay retroactive child support, failed to consider the best interests of the child. In advancing this argument, Gregory relies on cases in which courts have declined to determine paternity when doing so would be contrary to the child's best interests. *See In re Paternity of "Adam"*, 273 Mont. 351, 903 P.2d 207, 211 (1995) (probability that putative father was biological father was important but not controlling consideration in paternity action, but rather best interest of child was proper standard to apply in determining whether to declare paternity); *McDaniels v. Carlson*, 108 Wash.2d 299, 738 P.2d 254, 262 (1987) (en banc) ("In determining whether it is in the child's best interests to allow a paternity action by one

outside the present family, the trial court should consider the stability of the present home environment, the existence or lack thereof of an ongoing family unit, the extent to which uncertainty of parentage already exists in the child's mind, and any other factors which may be relevant in assessing the potential benefit or detriment to the child.").

■ {15} According to the best-interest-of-the-child approach, the trial court does not automatically assume that a paternity determination is in the best interest of the child. *Id.* Where a child is young and has already established a close emotional bond with the presumed father, and where the trial court determines that it would be detrimental to the child's welfare to compromise the continuity of that established relationship, the court will not determine paternity solely on the basis of a biological relationship between the child and the putative father. *Id.; see also In re Marriage of Ross*, 245 Kan. 591, 783 P.2d 331, 338–39 (1989) (as modified Jan. 12, 1990).

{16} Although Tedford's role and presence as a father figure in Jeanne's life makes this case different from *Padilla*, and therefore raises an issue of first impression in New Mexico, we do not believe that the best-interest-of-the-child standard is applicable in this case. In paternity actions wherein the best-interest-of-the-child test has been applied, the child is invariably a minor. Furthermore, in the cases relied upon by Gregory, the paternity proceedings were initiated, not by the child, but by the putative father, who in most instances was a stranger to the child, or by a parent, who sought to establish or disestablish paternity in a divorce or support proceeding. *See, e.g., W.C., In Interest of A.M.K.*, 907 P.2d 719, 722 (Colo.Ct.App. 1995) (paternity action by biological father; court disallowed claim to establish parent and child relationship, holding that continuation of relationship between child and mother's husband was in child's best interests); *D.B.S., By and Through P.S. v. M.S.*, 20 Kan.App.2d 438, 888 P.2d 875, 883–84 (action by putative father to establish paternity of child born during mother's marriage to another man; court refused to order blood

tests where seven-year-old child's existing relationships were healthy and stable, and child was unconcerned with parentage), *aff'd*, 258 Kan. 396, 903 P.2d 1345 (1995); *In re Paternity of "Adam"*, 903 P.2d at 211 (paternity action by putative father; court held it was not in child's best interests to declare paternity in putative father, where, among other things, putative father had no contact with child and had demonstrated no personal commitment to child); *Mak–M v. SM*, 854 P.2d 64, 66–67 (Wyo.1993) (action by mother to disestablish ex-husband's paternity; court held that sustaining ex-husband's presumptive parenthood promoted best interests of child where child was only six-years-old, ex-husband was only father child had ever known).

■ {17} We conclude that the best-interest-of-the-child standard is applicable in a paternity or retroactive child support action only when the child involved in such proceeding is a minor and has developed a close emotional attachment to the presumed parents so that court recognition of another parent would be emotionally or otherwise damaging to the child. Those facts are not present in this case.

■ {18} Moreover, the trial court could properly conclude that Gregory, who denied paternity and seeks to avoid paying support, is not a proper party to advance the best-interest-of-the-child theory. *See In re Marriage of Thier*, 67 Wash.App. 940, 841 P.2d 794, 798 (1992) (in absence of showing that paternity determination is in child's best interests, best-interest-of-child standard cannot be invoked on behalf of someone other than child); *see also D.B.S. By and Through P.S.*, 888 P.2d at 887–88 (court is to review factual circumstances from child's perspective and to determine best interest of child in such a way that will maximize child's opportunities for successful life, even if such approach is detrimental to parents).

### Collateral Estoppel

■ {19} Gregory additionally argues that Jeanne's action is barred by the doctrine of collateral estoppel. More specifically, he contends that Nina's and Tedford's divorce decree and property settlement agreement,

both of which included the finding that Jeanne was born of the marriage, barred Jeanne from bringing this paternity action, and that Jeanne was in privity with her mother in the divorce proceeding. Although the doctrines of claim and issue preclusion generally apply to domestic relations judgments, *Cherpelis v. Cherpelis*, 1996–NMCA–037, ¶ 17, 121 N.M. 500, 914 P.2d 637, the trial court properly found that these doctrines did not bar Jeanne's suit against Gregory. In *Callison v. Naylor*, 108 N.M. 674, 676–77, 777 P.2d 913, 915–16 (Ct.App.1989), this Court held that a former husband was collaterally estopped from bringing a proceeding to question the paternity of his daughter where an earlier divorce decree included the finding that the child was born of the marriage. However, the holding in *Callison* was limited to the former husband, and specifically excluded the child from its application:

> [I]n the event that in the future [the child] should wish to bring an action against a third party under the [UPA], we doubt that a judgment founded on collateral estoppel in this appeal would preclude [the child] from doing so. Such an action would be brought to determine whether a parent-child relationship exists between [the child] and the third party, an issue that has not been litigated in either the divorce proceeding or in this case. We believe the doctrine of collateral estoppel would be inapplicable under such circumstances.

*Id.* at 677, 777 P.2d at 916 (citation omitted).

{20} Because of the distinct interests involved, courts generally refuse to find privity between a child bringing a paternity proceeding and a parent in a divorce or other proceeding involving adjudication of the child's legitimacy. *See County of Shasta v. Caruthers*, 31 Cal.App.4th 1838, 38 Cal.Rptr.2d 18, 20 (1995); *People In Interest of M.C.*, 895 P.2d 1098, 1101 (Colo.Ct.App.1994), *aff'd*, 914 P.2d 355 (Colo.1996) (en banc); *Simcox By and Through Dear v. Simcox*, 175 Ill.App.3d 473, 124 Ill.Dec. 915, 529 N.E.2d 1032, 1034 (1988), *aff'd in part and vacated in part*, 131 Ill.2d 491, 137 Ill.Dec. 664, 546 N.E.2d 609 (1989); *J.W.L. By J.L.M. v. A.J.P.*, 672 N.E.2d 966, 967 (Ind.Ct.App.1996); *J.C. v.*

E.M., 36 Mass.App.Ct. 446, 632 N.E.2d 429, 430 (1994); *Baker ex rel. Williams v. Williams,* 503 So.2d 249, 254 (Miss.1987); *N.M. v. J.G.,* 255 N.J.Super. 423, 605 A.2d 709, 712 (Ct.App.Div.1992); *Settle By and Through Sullivan v. Beasley,* 309 N.C. 616, 308 S.E.2d 288, 290 (1983); *Shelton v. An Infant,* 12 Va.App. 859, 406 S.E.2d 421, 423 (1991); *In re Paternity of SDM,* 882 P.2d 1217, 1223 (Wyo.1994); *see also Sparks By and Through Haley v. Sparks,* 114 N.M. 764, 767, 845 P.2d 858, 861 (Ct.App.1992) (holding that mother was not proper party to represent child in paternity proceeding because of potential conflict of interest); Uniform Parentage Act § 9, Comment, 9B U.L.A. 312 (1987) ("The mother or father may not represent the child in the action, since their interests may conflict with those of the child."). *See generally* Donald M. Zupanec, Annotation, *Effect, In Subsequent Proceedings, of Paternity Findings or Implications in Divorce or Annulment Decree or In Support or Custody Order Made Incidental Thereto,* 78 A.L.R.3d 846, 851 (1977).

{21} Because Jeanne was not a party to the divorce proceeding and was not in privity with her mother, we conclude that her claims against Gregory are not barred by the doctrine of collateral estoppel.

*Equitable Defenses*

{22} Gregory also asserts that the trial court erred in ordering him to pay retroactive child support to Jeanne and ignored his equitable defenses, alleging that Jeanne should not be permitted to recover retroactive child support against him because she came before the trial court with unclean hands. Gregory contends that she failed to disclose to Tedford information she had received from Nina concerning her paternity, that she failed to promptly inform Tedford of her lawsuit against Gregory, and that she continued to seek and accept support from Tedford during the pendency of her suit against Gregory. Based upon our review of the record, we do not believe the trial court erred in rejecting this defense. Jeanne did not discover the truth about her paternity until she was sixteen years old. At that time, Nina told Jeanne that Tedford was not

her biological father. As a minor, she was not in a position to take official action of her own to resolve the question of her paternity. *See* § 40–11–9 (requiring minor to be represented by guardian .or guardian ad litem); *see also Sparks,* 114 N.M. at 767, 845 P.2d at 861 (mother was not proper party to represent child in paternity proceeding under UPA). The trial court could reasonably determine that, based upon the circumstances existing here, it was not inequitable for Jeanne to wait until she was emancipated before acting on her own by seeking counsel and filing this action on her own behalf. Even had Jeanne not informed Tedford of her paternity suit against Gregory, Tedford was later joined as an indispensable party herein at the direction of the trial court.

*Claims of Double Recovery and Sufficiency of Evidence*

{23} The parties stipulated that Tedford contributed a total of $82,873.65 toward the care and support of Jeanne. The trial court found that Tedford paid the sum of $45,127.31 for Jeanne's support and maintenance between the date of his divorce from Jeanne's mother in November 1975, and the time Jeanne reached the age of eighteen. The balance, $37,746.34, was paid to Jeanne after she reached age eighteen primarily for college expenses. The trial court awarded Tedford $40,900.07 as reimbursement for most of the money he expended for the support and maintenance following his divorce and until Jeanne attained the age of majority. The trial court also awarded the sum of $50,000 directly to Jeanne as retroactive child support.

{24} Gregory argues that because Jeanne was supported by Tedford during her minority, she would be unjustly enriched if she were now to recover retroactive child support from Gregory. The Uniform Parentage Act, however, mandates retroactive child support pursuant to the child support guidelines. Section 40–11–15(C) (requiring the calculation of support from the date of the child's birth pursuant to NMSA 1978, §§ 40–4–11 to –11.3 (1988, as amended through 1995)). In New Mexico, both legitimate and illegitimate children are entitled to

support from their parents. *See Stringer v. Dudoich,* 92 N.M. 98, 99, 583 P.2d 462, 463 (1978). Thus, Gregory's duty to support his daughter is unaffected by any money she may have received from other sources. Jeanne's child support award is authorized by statute and does not constitute double recovery. Indeed, Gregory made no effort to financially support Jeanne, and if we were to deduct from Jeanne's award any amount Tedford contributed to her support, Gregory would be rewarded for participating in a constructive fraud and failing to support his daughter. *See Mougey v. Salzwedel,* 401 N.W.2d 509, 512 (N.D.1987) (fact that stepparent provided support does not affect legal obligation imposed upon natural parent to support his or her child).

{25} Gregory asserts that even if this Court affirms the trial court's finding that he is the natural father of Jeanne, nevertheless, the trial court erred in calculating the amount of retroactive child support purportedly owing to Jeanne by him. Relying in part upon *Leeder v. Leeder,* 118 N.M. 603, 884 P.2d 494 (Ct.App.1994), he argues that the child support guidelines do not apply in this case, and that any award of retroactive child support to Jeanne should not exceed the amounts actually shown to have been expended by Nina and Tedford in supporting Jeanne during her minority. We disagree. Jeanne is entitled to an award of retroactive child support based on Gregory's financial status and enhanced income.

{26} At trial, to support her claim for retroactive child support, Jeanne presented evidence of Gregory's income and assets over a twenty-year period from the date of her birth on September 27, 1974, to the trial date. The evidence indicated that, since 1974, Gregory was a businessman in Carlsbad, New Mexico. The evidence also showed that from 1974 to the date of trial, Gregory had increased his assets, including a ranch, an apartment complex, land, investment interests, a restaurant, a $49,000 IRA and negotiable securities in excess of $140,000. In addition, Jeanne showed that in 1995, Gregory's personal holdings had a value of $853,045 in marketable securities and real estate, not including his apartment complex holdings, his $49,000 IRA, equity in various promissory notes or his personal residence. Additional evidence indicated that from 1974 through 1992, Gregory's reported FICA or taxable social security wages averaged $31,305.81 per year.

{27} Jeanne requested an award of retroactive child support based on two alternative calculations: The sum of $82,006.56 based on a lower average income figure that considered only Gregory's reported FICA wages for the relevant period, or the sum of $106,254.72, which amount was based on a higher average income figure that took into consideration evidence of additional income received by Gregory during the period of Jeanne's minority. The child support requested by Jeanne was computed using the child support guidelines set forth in Section 40–4–11.1.

{28} In *Leeder* we reviewed a trial court's order increasing a former husband's child support payments. The trial court calculated the amount of the former husband's support obligation by applying the child support guidelines then in effect. *Leeder,* 118 N.M. at 605, 884 P.2d at 496. On appeal, the husband argued that the trial court erred in not deviating downward from the guidelines because he had presented evidence that his former wife's actual expenditures in supporting the children were less than the child support ordered. *Id.* at 606, 884 P.2d at 497. We rejected this argument and affirmed the trial court's application of the guidelines, noting that the child support "guidelines are not intended to reflect what the parents have in fact been spending for the care, maintenance, and education of their children[,] [but] [r]ather, they sat a presumptive figure for what the parents *should* be spending." *Id.* Applying the above precedent to the facts herein, the trial court could properly award retroactive child support to Jeanne in excess of that actually paid by Tedford and Nina.

{29} Retroactive child support may be awarded in a paternity action. Section 40–11–15(C) of the UPA specifies the method for calculating retroactive child support. This section provides, in applicable part, that a judgment determining an individual to be the natural father of a child "may direct the

father to pay the reasonable expenses of the mother's pregnancy, birth and confinement. The court shall [also] order child support retroactive to the date of the child's birth pursuant to the provisions of Sections 40–4–11 through 40–4–11.3 NMSA 1978." The latter sections refer to the method for calculating child support based on evidence relating to the monthly income of the parents, the number of children, and other relevant factors.

{30} In a related attack upon the amount of retroactive child support awarded to Jeanne, Gregory also argues that the award of $50,000 to Jeanne, plus post-judgment interest, in back child support, is not supported by the evidence and by the trial court's findings. The trial court's decision includes, in part, the following findings:

25. Since Jeanne's birth in 1974, Donald Wayne Gregory has been a self-employed businessman in Carlsbad, New Mexico.

26. From 1974 to the time of Trial, Donald Wayne Gregory has increased his assets, which include a ranch, land, apartment complex, investment interests, restaurant, a $49,000.00 IRA and negotiable securities in excess of $140,000.00. Donald Wayne Gregory's personal holdings have a 1995 value of $853,045.00 in marketable securities and real estate not including his apartment complex holdings, his $49,000.00 IRA, equity in various promissory notes or his personal residence.

27. From 1974 through 1992, Donald Wayne Gregory's reported FICA wages averaged $31,305.81 per year.

28. The Court finds that Jeanne Tedford is entitled to recover retroactive child support from Donald Wayne Gregory, who the Court finds is her biological father and who failed, refused and neglected to pay any support and permitted Harvey Tedford to pay child support to one not his child.

29. Jeanne Tedford, the Court finds, has been provided with a more than reasonable support from Harvey Tedford, who has also assisted Jeanne Tedford by furnishing her a college education.

30. The Court finds it would be unjust or inappropriate to require the calculation of the retroactive child support under the Statutory Guidelines due to the factual situation in this matter.

The trial court also awarded Tedford the sum of $40,900.07 on his claim of reimbursement for child support paid for Jeanne.

{31} Gregory argues that Jeanne failed to present evidence from which the trial court could determine the amount of retroactive child support which was reasonably necessary for her support during her minority. We disagree. Jeanne presented evidence of Gregory's income during the period of her minority. Based upon this evidence, the trial court could reasonably fix an amount of reasonable monthly child support. In determining the amount of retroactive child support to be awarded in a paternity proceeding, the court should first determine both the mother's and the father's income during the applicable time periods. Such findings should be made before applying any deviation from the standard child support guidelines. *See State ex rel. Taylor v. Dorsey*, 81 Wash.App. 414, 914 P.2d 773, 778 (1996).

{32} We agree with Gregory, however, that the trial court's decision fails to explain how it calculated the $50,000 award made in favor of Jeanne. Jeanne requested support in the alternative amounts of $82,006.56 and $106,254.72. Both amounts were calculated under the child support guidelines, using different average income figures attributed to Gregory during the period of Jeanne's minority. Under the provisions of Section 40–4–11(A), the trial court was required to make a determination of the amount of support presumed to be paid in accordance with the guidelines and to enter a finding of that amount. Although it is clear that the trial court deviated from the child support guidelines, the reason for the deviation was not explained. The trial court made only a general finding pursuant to NMSA 1978, Section 40–4–11.2 (1989) that "it would be unjust or inappropriate to require the calculation of the retroactive child support under the Statutory Guidelines due to the factual situation in this matter."

{33} Thus, we conclude that the trial court erred: (1) in departing from the child support guidelines as required by Section 40–11–15(C) without *first* determining and entering a finding of the amount due under the guidelines; (2) in failing to clearly indicate how it determined the $50,000 award in favor of Jeanne; and (3) in failing to specify the reasons for the trial court's decision in deviating from the child support guidelines. See *In re D.R.V.,* 885 P.2d 351, 353–54 (Colo.Ct. App.1994) (where appellate court could not conclude whether trial court had determined guideline amount, the extent of the deviation and the reasons therefor, trial court abused its discretion in deviating from guidelines, and the case was remanded for further findings "that allow this court and the parties to discern the reasons for the deviation"); *Dorsey,* 914 P.2d at 778 (requiring an award of back support to include written factual findings supported by evidence, including reasons for deviation from guidelines); *see also Michelson v. Michelson,* 89 N.M. 282, 284, 551 P.2d 638, 640 (1976) (where there is doubt as to findings adopted by trial court, and such doubt precluded meaningful appellate review, the case will be remanded for additional findings and conclusions).

{34} Accordingly, we reverse the trial court's decision which awarded $50,000 to Jeanne and remand for further proceedings. Following remand, the trial court should adopt amended findings of fact and conclusions of law. Those amendments should detail the amount of retroactive child support it has determined that Gregory should be required to pay from September 27, 1974, to Jeanne's eighteenth birthday, in accordance with the child support guidelines and the standards set forth in *Padilla,* 116 N.M. 398, 862 P.2d 1257 and *Spingola v. Spingola,* 91 N.M. 737, 580 P.2d 958 (1978), and should include a specific finding of the guideline amount. The amended findings and conclusions should also include any award to Jeanne of past support from Gregory, including the amount he should be required to pay under the applicable child support guidelines. In the event the trial court determines that the calculation of retroactive child support should not be based on the applicable child support guidelines in effect during the period

of Jeanne's minority, to enter specific findings in accordance with Sections 40–4–11.1(A) and –11.2. The amended findings and conclusions should detail why child support calculated on the guidelines amount would be "unjust or inappropriate," why a deviation from the child support guidelines should apply, and the method utilized for calculating such award.

### B. Issues Related to Tedford's Cross–Claims

#### Collateral Estoppel

■ {35} Gregory also contends that Tedford's counterclaim against him for reimbursement of child support is barred by the doctrine of collateral estoppel under this Court's decision in *Callison,* 108 N.M. 674, 777 P.2d 913. We agree. In *Callison* the father brought a post-divorce action against the mother and the child seeking to disestablish paternity under the UPA. In *Callison,* as in this case, the father had previously filed a petition for divorce alleging that the child in question was born during the marriage of the parties. In that action, as here, the mother and father had entered into a settlement agreement establishing the child support to be paid by the father. *Id.* at 675,777 P.2d at 914.

{36} Tedford contends that his claim for reimbursement against Gregory is authorized under the UPA and common law. He further argues that even though the child support provisions require that a parent support a child only through minority, *see* § 40–4–11 to –11.3, equitable principles should be applied in this case to require reimbursement to him for the full amount of support paid by him on behalf of Jeanne, including the $38,407.98 paid toward Jeanne's post-minority college and living expenses. We disagree.

■ {37} Gregory correctly points out that where a divorce decree adjudicates the issue of what child, or children, have been born of the marriage, unless such determination has been timely challenged and set aside, the parties or those in privity thereto are barred from relitigating such issue. The *Callison* Court observed:

Where paternity has been established in a divorce proceeding, an alleged father is barred under the doctrine of collateral estoppel from later questioning paternity in a proceeding under the [UPA]. *See In re Gilbraith,* 32 Ohio St.3d 127, 512 N.E.2d 956 (1987). The purpose of collateral estoppel is to prevent endless relitigation of the same issues. *Adams v. United Steelworkers of Am.,* 97 N.M. 369, 640 P.2d 475 (1982).

*Callison,* 108 N.M. at 676, 777 P.2d at 915; *see also Clay v. Clay,* 397 N.W.2d 571, 575 (Minn.Ct.App.1986) (where husband acknowledged in divorce proceedings paternity of child, doctrine of res judicata precludes post-dissolution proceedings); *In re Paternity of JRW,* 814 P.2d 1256, 1264 (Wyo.1991) (justification for the doctrines of res judicata and collateral estoppel include prevention of inconsistent decisions, preclude piecemeal litigation, and conservation of judicial resources).

■ {38} As observed by Donald M. Zupanec, despite the fact that, traditionally, the operation of the doctrine of res judicata required that, in order for the bar to apply, it must be shown that the parties in the present case were bound by an earlier judgment, "the modern trend is to discard the mutuality rule as such. Thus, a finding of paternity in a divorce or annulment decree may operate as· an estoppel not only between the parties to the decree, but also against a party involved in an action with a nonparty because the former is himself bound by the decree." 78 A.L.R.3d at 853 (footnote omitted). New Mexico courts have adopted the modern approach to issue preclusion. *See Callison,* 108 N.M. at 676, 777 P.2d at 915.

■ {39} Because Tedford is precluded by the doctrine of defensive collateral estoppel from asserting a claim of reimbursement against Gregory, for similar reasons, we also conclude that Tedford is precluded from pursuing a cross-claim for reimbursement of child support against Jeanne. Since Tedford is barred by collateral estoppel from contesting the issue of Jeanne's paternity and asserting a claim for reimbursement against Gregory or Jeanne, we need not consider Gregory's or Jeanne's other defenses against Tedford.

{40} Although equitable considerations in individual cases, where the doctrine of collateral estoppel has not been asserted or is found not to apply, may warrant a claim for reimbursement from an individual who has furnished child support for such child, *see Anonymous Wife v. Anonymous Husband,* 153 Ariz. 573, 739 P.2d 794, 798 (1987), such exceptions have not been shown to apply here.

## II. The Cross–Appeals
### Award of Support to Jeanne

{41} Jeanne contends the trial court erred in not awarding her the full amount of child support Gregory should have paid under the child support guidelines. As discussed previously, the trial court's findings of fact are insufficient to disclose the manner in which the court calculated the award of support to both Jeanne and Tedford. Thus, we remand for adoption of additional findings of fact and conclusions of law detailing the basis for the trial court's award to Jeanne.

### Attorney's Fees, Costs, and Sanctions

■ {42} Because the issues raised by Jeanne and Tedford in this aspect of the two cross-appeals are interrelated, we jointly discuss such contentions. Jeanne and Tedford assert that the trial court erred in refusing to award them attorney's fees and costs. Section 40–11–16 of the UPA provides:

> *The court may order reasonable fees of counsel,* experts, the child's guardian and *other costs of the action* and pre-trial proceedings, including blood or genetic tests, to be paid by any party in proportions and at times determined by the court. The court may order the proportion of any indigent party to be paid from court funds. [Emphasis added.]

■ {43} We review a trial court's order granting or denying an award of costs or attorney's fees for an abuse of discretion. *See Martinez v. Martinez,* 1997–NMCA–096, ¶ 17, 123 N.M. 816, 945 P.2d 1034. Abuse of discretion occurs when the trial court's ruling is clearly against the logic and effect of the

facts and circumstances before the court. *Id.* ¶ 20, 123 N.M. 816, 945 P.2d 1034. That discretion, however, is not unlimited. *Roberts v. Wright,* 117 N.M. 294, 297, 871 P.2d 390, 393 (Ct.App.1994).

{44} Under the clear import of Section 40–11–16, a party is not automatically entitled to an award of attorney's fees but may be awarded attorney's fees upon a showing of economic disparity or need. *See Alverson v. Harris,* 1997–NMCA–024, ¶ 26, 123 N.M. 153, 935 P.2d 1165 (decided in 1996). In *Alverson* this Court reviewed an award of attorney's fees in favor of the petition in a case brought in a child custody proceeding. Similarly, we have held in domestic relations cases that, in determining whether to award attorney's fees, the trial court should consider various factors, the most important of which is the economic disparity between the parties. *See, e.g., Gomez v. Gomez,* 119 N.M. 755, 759, 895 P.2d 277, 281 (Ct.App.1995); *Sheets v. Sheets,* 106 N.M. 451, 456, 744 P.2d 924, 929 (Ct.App.1987). Moreover, the trial court should consider the " 'nature of the proceedings, the complexity of the issues, the relief sought and recovered, the ability of the parties' attorneys and the ability of the parties to pay.' " *Gomez,* 119 N.M. at 759, 895 P.2d at 281 (quoting *Gilmore v. Gilmore,* 106 N.M. 788, 792, 750 P.2d 1114, 1118 (Ct.App. 1988)).

{45} Jeanne presented evidence of the financial disparity between Gregory and herself, and of her inability, and Gregory's ability, to pay her attorney's fees and coats. She preserved the issue in her requested findings of fact. Based upon the facts of this case, and to give effect to the underlying purpose of the UPA, which is to enforce a parent's duty of support to a child, *Padilla,* 116 N.M. at 401, 862 P.2d at 1260, we conclude that, absent a finding of good cause, it was error to deny an award of attorney's fees and costs to Jeanne, and we remand for proceedings to determine an appropriate award of attorney's fees and costs consistent with Section 40–11– 16 and the principles set forth in the case law. *See Martinez,* 1997–NMCA–096, ¶ 18, 123 N.M. 816, 945 P.2d 1034 (observing that Rule 1–054(E) NMRA 1998 provides that " '[e]xcept when express provision therefor is

made either in a statute or in these rules, costs shall be allowed as a matter of course to the prevailing party unless the court otherwise directs' "); *see also* NMSA 1978, § 39–3–30 (1966) (prevailing party shall recover costs against other party "unless the court orders otherwise for good cause shown").

{46} Based on our review of the record and our determination that Tedford was barred from obtaining any recovery against Gregory or Jeanne, we find no error in the trial court's denial of attorney fees or costs to Tedford.

{47} Lastly, both Jeanne and Tedford argue that the trial court erred in refusing to impose sanctions against Gregory. They argue that his denial of paternity following receipt of the results of the blood testing, and his assertion of certain affirmative defenses constitute "bad faith." Based on our review of the record, our determination that the trial court erred in denying Gregory's defense of collateral estoppel against Tedford, and the issues of first impression raised herein, we cannot say that Gregory's defenses to the claims of Jeanne and Tedford were frivolous or in bad faith.

*CONCLUSION*

{48} We affirm the trial court's determination that Gregory is the natural father of Jeanne. We hold that Jeanne is entitled to an award of retroactive child support against Gregory consistent with the matters discussed herein. The judgment awarding Tedford reimbursement against Gregory and Jeanne is reversed. We affirm the trial court's denial of sanctions. We reverse the trial court's denial of attorney fees and costs in favor of Jeanne, and the trial court's decision awarding $50,000 to Jeanne and remand for further proceedings and findings thereon, as discussed herein.

{49} IT IS SO ORDERED.

FLORES, J., concurs.

BOSSON, Judge, special concurrence.

{50} I concur in the remit and in most of the reasoning of the opinion. I write separately for two reasons. I want to emphasize

that, on remand, the district court is to apply the child support guidelines to Gregory and award Jeanne the full amount of retroactive child support she is entitled to, regardless of what Tedford may have expended on her behalf during the years before or alter her age of majority. What will happen to Tedford's Claim for reimbursement? That is my second reason for writing specially.

{51} The easy answer is that Jeanne can, and likely should, reimburse her putative father from the amount she receives from Gregory for some or all of the money he expended on her behalf over the years, when that money should have been contributed by Gregory. If she does not do so, she may well become the beneficiary of "double recovery." That does not bother me with respect to Gregory. Equity is not an appropriate defense for Gregory whose unclean hands bear much of the responsibility for Jeanne's injury. However, in my judgment, the prevention of unjust enrichment would justify a cross-claim by Tedford against Jeanne to recover that amount from the sum she receives from Gregory. The cross-claim would be based upon equitable principles of restitution and unjust enrichment. The Court's opinion denies Tedford that claim because of collateral estoppel which is also founded upon equitable principles.

{52} This is a sensitive subject. We do not wish to encourage embittered parties to a divorce who, for ulterior motives, may later wish to challenge the fidelity of their former spouses by questioning the parentage of their children. As a general proposition, collateral estoppel is appropriate in a case like this, when parents divorce and never question parentage, even in the face of circumstances that should give rise to reasonable suspicion. Having passed on the opportunity to raise the issue in a timely manner, parents should be discouraged from doing so later on, and collateral estoppel, when exercised consistently with sound judicial policy, is one means of accomplishing that end. Indeed, Tedford has conceded that he is barred by collateral estoppel from relitigating paternity.

{53} However, I believe that equitable principles should allow Tedford to make such a claim against Jeanne conditional upon her recovery from Gregory. I believe that the same public policy considerations disfavoring Tedford's relitigation of paternity are not present in a cross-claim against Jeanne, when she is, in effect, recovering child support that has been paid by Tedford. Jeanne has already opened the issue of parentage on her own, as she is entitled to do under the Uniform Parentage Act. Tedford would be merely asserting a conditional claim, similar to a contingent lien, dependent upon the success of Jeanne's action against Gregory. Essentially, such a course of action would impose a constructive trust on behalf of Tedford on a portion of whatever proceeds Jeanne receives from Gregory. I believe this course is justified under traditional principles of equity, restitution, and the prevention of unjust enrichment, and therefore, I would permit Tedford's claim to that limited extent.

{54} Thus, looking beyond this case, I believe that a court could consider the right of a person to be reimbursed for what he has spent when he can demonstrate he was fraudulently deceived into believing he was duty bound to support a child. Under such circumstances, collateral estoppel may not apply. A court would be well-advised to consider such a claim on its own merits and not necessarily as foreclosed by collateral estoppel. As I read the Court's opinion, it would not categorically preclude such a future claim.